613 So.2d 575 (1993)
In the INTEREST OF M.T.T., a Child.
No. 92-2648.
District Court of Appeal of Florida, First District.
February 8, 1993.
*576 Kenneth N. Scaff, Jr., Jasper, for appellants.
Douglas M. Miller, Child Welfare Legal Services, Lake City, for appellee Dept. of Health and Rehabilitative Services.
Mary Ann Shepard, Guardian ad Litem Program, Lake City, for appellee Guardian Ad Litem.
PER CURIAM.
This is an appeal of the trial court's order of disposition adopting its prior order adjudicating appellants' child, M.T.T., dependent, based on clear and convincing evidence of egregious prospective abuse. The trial court recommitted the child to the temporary custody of her paternal grandparents under the supervision of the Department of Health and Rehabilitative Services (HRS), and ordered HRS to initiate termination of parental rights proceedings. We affirm.
On the morning of January 28, 1992, M.T., appellants' 2 1/2 year old daughter was pronounced dead some time after 4:00 a.m., upon arrival at Lake Shore Hospital. On February 4, 1992, 4 year old M.T.T. was removed from her parents' custody because of the drug overdose death of her sister M.T. and her mother's past mental history,[1] and placed into protective custody by HRS.
An adjudicatory hearing was held on April 14, 1992, at which time the parents were represented by counsel. Dr. Peter Lipkovic, the medical examiner, testified that he performed an autopsy on January 28, 1992. He determined that the child died from the ingestion of an egregious level of Fioricet[2] and a toxic level of diazepam (Valium).
According to Art Picklo, Criminal Investigator for the Columbia County Sheriff's office, the parents told him that they picked the children up from a baby sitter at 5:10 p.m. on the night of January 27, 1992. The record gives no indication that the child was ill at that time. The parents reported that the child ate dinner at approximately 6:00 p.m. Picklo further testified that the parents claimed to have attempted to administer a prescribed antibiotic, Pediazole, at 9:30 p.m. This proved difficult as the child was fast asleep and would not wake up. At approximately 10:30 p.m. the parents checked on the child again. The husband again attempted to wake the child  in the words of Picklo he "slapped her" and "shook her in an attempt to wake her up," but she would not wake up. The husband then checked the child's eyes with a flashlight. The pupils reacted "slightly" to the light. The parents did not seek medical assistance until 4:00 a.m., although the mother wanted to call for help at 10:30 p.m., according to Picklo.
Picklo said that the parents could not offer any explanation of how the deceased child could have obtained the ingested drugs, but that the mother later admitted to stealing Valium from her place of employment. The mother then produced a *577 bottle of Fioricet from her purse. The Fioricet was a medication prescribed for the mother. Picklo also stated that during the investigation, the father flushed medication down the toilet despite contrary instructions of law enforcement personnel.
Dr. Lipkovic testified that based on the undigested food in the stomach and level of drug overdose, if the child had dinner at 6:00 p.m. she would have been in a coma or dead by 10:00 p.m. Picklo testified that accidental exposure to the drugs was ruled out because the deceased infant did not have access to the child-proof bottle of Fioricet and the mother reported that the drugs had not been disturbed from their usual locations. The medical examiner opined that the child's death was a homicide. Picklo stated that criminal charges had not been filed as of the date of the hearing.
On appeal, appellants argue that the trial court erred in finding by clear and convincing evidence that appellants' four year old daughter, M.T.T., was dependent based upon egregious prospective abuse. Although the present case involves an appeal from a dependency proceeding, even the termination of parental rights can be supported by a showing of prior abuse or neglect of other children. See Padgett v. Dept. of Health and Rehabilitative Services, 577 So.2d 565, 569 (Fla. 1991). We find the trial court's findings to be supported by the evidence. See In the Interest of D.J.S. and J.S.G., 563 So.2d 655, 662 (Fla. 1st DCA 1990) (on rehearing en banc) (trial court's determination that evidence is clear and convincing will not be overturned unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing (citing 5A C.J.S. Appeal and Error § 1656(9), at 519)).
AFFIRMED.
BARFIELD and MINER, JJ., concur.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge (dissenting).
Because I construe the evidence and findings of the court to be consistent with the parents having unwittingly, albeit negligently, administered the Fioricet and Diazepam instead of the Pediazole prescribed for the deceased child, and there being no other evidence of abuse or neglect on the part of these parents toward either the deceased child or M.T.T., I do not agree that prospective abuse of the deceased child's sister, M.T.T., was proven by clear and convincing evidence. For this reason, I dissent.
NOTES
[1] According to Investigator Art Picklo the mother admitted to a past history of attempted suicide by drug overdose and by attempting to slash her wrists.
[2] The medical examiner found excessive levels of butalbital (a barbituate), acetaminophen or Tylenol, and caffeine. These are the ingredients of Fioricet, and were found in such proportions as to lead the medical examiner to conclude that Fioricet was ingested.