820 So.2d 980 (2002)
D. CHILDREN, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 4D01-1644.
District Court of Appeal of Florida, Fourth District.
June 5, 2002.
Rehearing Denied July 24, 2002.
Kathleen K. Peña of the Law Offices of Seiler & Sautter, Fort Lauderdale, for appellant.
*981 Robert A. Butterworth, Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
KLEIN, J.
We affirm an order declaring three children dependent. The children were ages three, two, and nine months, all at home, prior to the mother bringing the nine-month-old girl to the emergency room where the examining pediatrician found anal trauma, indicative of penetration.
The police investigated, have not been able to identify who caused the injury, and the criminal investigation remains open. The department filed a petition to terminate parental rights, but amended it at the hearing to seek an adjudication of dependency.
The mother told the pediatrician she had left her daughter naked on the floor while she went to get a clean diaper, and when she returned, the baby was having a bloody bowel movement. She told a nurse that she had observed the family Dachshund walking away from the child and thought the dog caused the injury.
There was medical testimony to the effect that there had been blunt trauma to the anus and bruising, which could not have been caused by constipation or any other natural process, or a fall. There were fissures consistent with penetration. None of the experts believed the injury could have been caused by the dog. No one, other than the parents, thought that this was a plausible possibility, and the mother's explanations as to her observations regarding the dog were inconsistent. Moreover, neither parent removed the dog from the household. The court found that neither parent was credible and that the father had not cooperated in the effort to determine the cause of the injury.
The day before this incident, the mother had taken the same child to the emergency room explaining that she had fallen down some steps. The mother had given different versions of how the child had fallen to different people who had interviewed her, and the doctors had found no injury.
We affirm without further discussion the finding of dependency as to the mother in regard to the one child based on the nature of the injury and the fact that it occurred while the child was in her care and presence.
The father argues that there was no evidence to support dependency as to him because he was not at home when the injury occurred. The mother testified that she called him at work as soon as she saw the injury and he immediately came home. As we noted earlier, however, the trial court found neither parent to be credible. We do not, in contrast to the dissent, accept as a given that the father was not in the home at the time the injury occurred. Assuming the father was not home, however, we would still affirm dependency as to him.
In In re B.J., 737 So.2d 1227, 1228-29 (Fla. 2d DCA 1999) a six-month-old infant died from injuries caused either by blunt trauma or shaking which were inflicted between two and five hours prior to his arrival at the hospital. During that period of time the infant was at home with both of his parents. The mother appealed the order terminating her parental rights, but the court affirmed, explaining:
The Mother argues that the trial court could not find that she engaged in egregious conduct by causing infant M.W.'s death because the evidence applies with equal force to her husband. However, where there is evidence that a child suffered abuse by one or both of the parents present, there is clear and convincing *982 evidence of egregious abuse to support termination of parental rights of both parents. See In re: M.T.T., 613 So.2d 575, 577 (Fla. 1st DCA 1993)(affirming termination of parental rights of both parents where the evidence showed that the child was administered an overdose of drugs while in the care of both parents, but it was not clear which parent administered the drugs).
In this case, the DCFS presented evidence that infant M.W. died from abuse inflicted while in the care of both parents. During the time period in which the injuries were most likely inflicted, only the Mother, her husband, their eighteen-month-old child T.W., and infant M.W. were in the residence. There was no testimony that any adult other than the Mother and her husband had access to the infant between two and five hours prior to his arrival at the hospital.
The court found in B.J. that termination was supported by clear and convincing evidence and affirmed. The present case, unlike B.J., is a dependency case, not a termination case, and the burden was preponderance of evidence, not clear and convincing evidence. § 39.507(1)(b), Fla. Stat. (2001). The purpose of a dependency proceeding is "the protection of the child and not the punishment of the person creating the condition of dependency." § 39.501(2), Fla. Stat.
The court's discretion is "very broad with respect to proceedings involving child welfare." D.H., 769 So.2d at 426. Considering that: (1) there was ample evidence to support dependency as to the mother, (2) the perpetrator of the abuse has not been identified, and (3) this is an intact family, we find no abuse of discretion in the court finding dependency as to both parents rather than solely as to the mother. All three of the above factors are, however, essential to our affirmance as to the father.
Appellants also argue that the two siblings, who were home when this occurred, should not have been declared dependent, citing In re M.F., 770 So.2d 1189 (Fla.2000). In that case the Florida Supreme Court held that a trial court cannot declare one child dependent solely because a parent committed a sex act on a different child. Rather, the court should focus on all of the circumstances. See also D.H. v. Dep't of Children and Families, 769 So.2d 424 (Fla. 4th DCA 2000). In the present case, however, the trial court was not relying only on the injury to the baby in finding the other two children dependent.
One of the caseworkers, whom the court considered to be an expert on risk assessment, testified that in light of the lack of explanation for this injury "the needs of the parties could not be assessed to ensure the safety of the children." In addition to finding that witness credible, the trial court also found, based on the injury, that the parents "engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent the egregious conduct that threatened the life, safety and physical health of the child" and that all three children were "at substantial risk of abuse or neglect if returned to the home."
Considering how close these children were in age, the unlikelihood of this injury occurring naturally or by accident, and the lack of the parents' credibility, we conclude that the trial court had the discretion, even though this is a close question, to find dependency as to all three children. We defer to the trial judge, who heard and observed the witnesses, and resolved the conflicts and doubts in favor of protecting all three of the children, not just the one who was abused. Because these children were all very young, and because of the *983 nature of this abuse, we do not agree with the dissent that the fact that the abused child was a girl and the siblings are boys is significant.
Affirmed.
MAY, J., concurs.
WARNER, J., concurs in part and dissents in part.
WARNER, J., concurring in part and dissenting in part.
I concur in the majority's affirmance of the court's decision to adjudicate the infant minor child dependent as to the mother. There was evidence of an injury to the infant's anus, in the form of a bruise and anal fissures. The penetration that is mentioned in the majority opinion would at most be "penetration" of the outer area of the anus, as the examining physician (as well as the other physicians giving opinions in this case) testified that there were no internal injuries and no penetration of the rectum. Moreover, they testified that fissures of this nature could occur with constipation and are common in infants but that constipation could not cause bruising. Bruising could occur by any object pushed against the anus. A rape examination was completed, and DNA analysis was done. They revealed nothing. Nevertheless, the injury to the anus itself would constitute harm within the meaning of section 39.01(30)(b), Florida Statutes (2000).
Although the medical director of the Child Protection Team testified that there was a low risk of further abuse of this child, the social worker who did a risk assessment testified that there was a high risk of further abuse based upon the fact that the Department could not determine who or what caused the injury.[1] Therefore, as noted in the majority opinion, "the needs of the parties could not be assessed to ensure the safety of the children." I do not follow the logic of the Department in concluding that the risk of future abuse is high where the cause of injury is undetermined. However, there was some evidence, as the trial court apparently found, that the injury was caused or occurred while the mother was in charge of the child. The court could therefore conclude that the mother must have injured her child or neglected her. Services to assure that this type of abuse does not reoccur would be prudent.[2]
With respect to the father, I cannot conclude that there was any evidence to support a finding that he abused his daughter or that his daughter was abused while in his custody or control. The mother testified that the father was not home when this incident occurred, and there is no evidence in the record that he was home. The detective who investigated the *984 event testified that his investigation "would indicate that [the father] was most likely at work at the time of the incident." However, despite the lack of probable cause to arrest either parent, they both remained suspects. The evidence was insufficient to keep the father as a suspect, especially when he was not home at the time of the incident.
The trial court cited to In the Interest of B.J., 737 So.2d 1227, 1228 (Fla. 2d DCA 1999), for the proposition that "where there is evidence that a child suffered abuse by one or both of the parents present, there is clear and convincing evidence of egregious abuse to support termination of parental rights of both parents." B.J. is distinguishable from the present set of facts. The children in B.J. had been declared dependent as a result of an earlier incident, the mother completed a case plan, and the children were returned to her. At that point, the mother had given birth to another child, M.W., who was six months old. The mother found the infant barely breathing in his crib one morning and rushed him to the hospital, where he died. The doctors testified that the child had serious spinal cord injuries caused by blunt trauma or shaking. They testified that those injuries occurred two to five hours prior to the child's admission to the hospital, at a time when the infant was at home with both of his parents. The trial court terminated the mother's parental rights as to the remaining children based upon the abuse of M.W.[3] The mother argued that she could not be found to have committed egregious conduct toward her child because the evidence applied with equal force to her husband. The second district disagreed, concluding that the evidence would support termination of the parental rights of either parent. See id. at 1229. The court specifically noted that during the time period when the abuse occurred only the mother and father, as well as the other small children, were in the residence. In addition, the mother made several statements which would indicate that she did cause the injuries inflicted.
In the case before us, there was no evidence that the father was present when the abuse occurred. The medical evidence did not suggest that the injuries occurred at a time when the father was home, as they did in B.J. In B.J., the court found it permissible to terminate based upon the death of an infant by "one or both of the parents present." Id. at 1228 (emphasis added). It did not authorize termination where one parent was not present at the time the injuries to the child occurred.
The majority opinion says that it does not "accept as a given, that the father was not in the home at the time the injury occurred." But there must be some evidence to support a finding that he could have had the opportunity to commit this abuse on his child. If the majority is saying that because the mother called the father at work to come home when she noticed the injury, and that when the father came home he was present at a time when the injury could have occurred, that is preposterous on the facts of this record. Before the mother called the father, she called her pediatrician to relate what had happened to the child.
There is no evidence, direct or circumstantial, in this record which would support a finding that the father was present when this injury occurred. That the father was termed by the investigating Department personnel and investigators as *985 being uncooperative does not give rise to an inference that he committed the abuse.[4]
The trial court also found that the father "had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct" to the infant. However, there was no evidence presented that he knew of the incident or somehow failed to prevent it.
The trial court disbelieved the father's testimony, but if one discards the father's testimony as not credible, the only evidence left is the detective's testimony that the father was at work. Evidence that the father was at home and "present" when the abuse occurred is simply absent from the record. As such, the court's findings as to the father are not supported by any evidence, and the dependency determination as to him should be reversed.
Court decisions are to be based upon evidence, reason, and logic. It seems as though those guiding principles have been lost in this case, and instead we are working on innuendo and suspicion. The majority has not identified the substantial, competent evidence which supports its affirmance as to the father.
I also would reverse the decision finding the other two minor boys dependent as to both parents. In order to find them dependent, evidence must show that the dependent child is found "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." § 39.01(14)(f), Fla. Stat. (2000). There is no evidence in the record that the two boys were at substantial risk of imminent abuse by the parents. All of the children were healthy, happy, and very well cared for. Their pediatrician testified to the excellent care they received from their parents. The two boys were examined by a member of the Child Protection Team and showed no evidence of any abuse, nor any signs which would be associated with abuse. There was absolutely no evidence of any problems with the boys at any time either before or after the incident with their sister.
Nevertheless, based solely on the testimony of the social worker, the trial court determined that the two boys were dependent. The social worker, who never interviewed the boys or the parents, testified that she found the same risk for the boys as for the infant girl.[5] She believed that where there is no identified perpetrator in the home where the incident occurred, services cannot be provided unless an identified perpetrator is willing to accept services.[6] She said, as to the two boys, "[w]ell, there's always a risk to other children. There can be a target child in cases of abuse; however, that does not mean that there is not a safety factor or risk to the other children as future victims also." She did not testify that the parents posed a substantial risk of imminent abuse.
I find that the social worker's testimony simply stated what was found impermissible in In the Interest of M.F., 770 So.2d 1189, 1194 (Fla.2000), which held:
A simple showing by DCF that a parent committed a sex act on one child does *986 not by itself constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling, as required by the statute. See § 39.01(11), Fla. Stat (1997). While the commission of such an act may be highly relevant, it is not automatically dispositive of the issue of dependency. A court instead should focus on all the circumstances surrounding the petition in each case.
M.F. endorsed the approach taken by the fifth district in cases such as Denson v. Department of Health & Rehabilitative Services, 661 So.2d 934 (Fla. 5th DCA 1995). There, the trial court found that Denson, the father, had sexually abused his daughter T.D. The court adjudicated his other minor child S.D. dependent as to both Denson and Barnes, the mother, as well as adjudicating Barnes' other children A.B. and P.B. dependent. In reversing these adjudications, the fifth district explained:
In the present case, the trial court found that the risk of prospective abuse was great simply because Denson had abused T.D. However, there was no evidence or expert testimony regarding Denson's mental or emotional condition, or the likelihood that he would abuse the other children. Further, there was no competent evidence that Barnes knew about Denson's abuse of T.D. (not her child), thus allowing a finding that she failed to take steps to protect her own three children. There was evidence that both Denson and Barnes were convicted drug users and that there was domestic violence in the home. However, the trial court made no findings, on these matters and adjudicated the children dependent based solely on the sexual abuse of T.D. Since we conclude that this evidence is insufficient to support an adjudication of dependency of the three children involved in this case, we are constrained to reverse.
... A child may be declared dependent or parental rights terminated based on the sexual abuse of other children but only where there is some reasonable basis in the evidence that the child is likewise at risk.
Id. at 936 (footnote omitted). Like the Denson court, I would conclude that the evidence is insufficient to support an adjudication of dependency as to the two boys in this case. There is no evidence of any mental or emotional condition of the parents that would likely lead them to abuse the two minor children. The social worker who testified to the risk of abuse did not interview the parents, so she did not give an opinion on this. Two psychologists testified, but neither opined that either parent was likely to abuse any of the children. There was no evidence of any other factors in the home which would show a risk of abuse. The predicate for the social worker's opinion as to the risk to the boys is only the abuse to the infant. That is insufficient according to M.F.
Deference to the trial court is necessary where evidence conflicts and the trial court is in the best position to judge the credibility of the witnesses in making findings of fact. Where there is no evidence to support the trial court's ruling, or where the facts as found by the trial court do not as a matter of law support the relief granted, no deference should be given. Indeed, if appellate courts cannot reverse a trial court's ruling where it is not supported by any evidence, or it conflicts with existing law, then what is the purpose for appellate review?
There is no reasonable basis in the evidence that the two minor boys are likewise at risk for abuse. I would therefore reverse *987 the finding of dependency of the two minor boys.
NOTES
[1] Although the parents did not object to the testimony of this social worker, the social worker's risk assessment would not be acceptable under section 39.301(6), Florida Statutes (2000), concerning child protective investigations, which states: "An assessment of risk and the perceived needs for the child and family shall be conducted in a manner that is sensitive to the social, economic, and cultural environment of the family. This assessment must include a face-to-face interview with the child, other siblings, parents, and other adults in the household and an onsite assessment of the child's residence." (Emphasis added). See also § 39.301(9), Fla. Stat. (2000) (detailing the necessary determinations arising from the onsite assessment and face-to-face interviews). The social worker did none of this.
[2] I would also point out that while the court made a finding that the injury caused "significant impairment of the child's physical health," this finding is refuted by all of the facts in the record. All of the medical experts testified that the injury was superficial, external, and not life-threatening. However, as stated above, it did constitute harm within the statutory definitions.
[3] A termination of parental rights to other siblings is permitted when the parent murders another child. See § 39.806(1)(h), Fla. Stat. (1999).
[4] I think it is a quite human reaction for the father to be uncooperative with someone who is making accusations that he abused his child.
[5] As stated in footnote one, this "risk assessment" did not satisfy statutory requirements.
[6] I am concerned that the social worker expects the parent to admit his or her acts of abuse. Such a requirement would be impermissible according to section 39.601(1), regarding case plans, which states "[a] parent of a child may not be required nor coerced through threat of loss of custody or parental rights to admit in the case plan to abusing, neglecting, or abandoning a child."