769 So.2d 424 (2000)
D.H., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D00-203.
District Court of Appeal of Florida, Fourth District.
September 13, 2000.
Rehearing Denied November 1, 2000.
*425 Chet E. Weinbaum, Fort Pierce, for appellant.
Crystal Y. Yates-Hammond, Fort Pierce, for appellee.
WARNER, C.J.
The appellant challenged the trial court's order declaring his small daughter dependent based upon the probability of prospective abuse. The court grounded this determination on abuse inflicted by appellant on a half-sister of his daughter, of whom appellant was a caregiver. We conclude that the evidence is legally insufficient to support the adjudication of dependency.
The appellant had a relationship with T.F., and M.H. was their child. T.F. also had another daughter, A.W., whom appellant took care of when T.F. was in and out of jail for drug possession and other charges. The relationship between appellant and T.F. was marked by domestic violence. On at least two occasions, law enforcement had to be called, and on at least one incident appellant was injured by T.F. One witness testified to seeing bruises on T.F.
The incident causing the dependency petition to be filed involved A.W. On the day of the incident, A.W. was playing with a friend and a new puppy. The puppy was on a leash. As appellant came out of the house with a large sink in his hands, he yelled at A.W. because the puppy's leash was stretched across a chair, and the puppy was choking. According to A.W.'s friend, who testified at trial, appellant kicked A.W. in the head, causing her to fall. He then walked over to her and started yelling at her. The witness testified that the kick was intentional. Appellant testified that he kicked the chair, not A.W., in order to release the dog. A.W. did not receive medical treatment, but her ear appeared to be very red. Her young friend testified that she cried for a long time. Neither A.W. nor her mother testified at the hearing. No other evidence was presented of any acts of abuse by appellant. Several witnesses testified that appellant spent considerable time with A.W. riding bikes and taking her places. There was no evidence presented with regard to appellant's relationship with M.H., other than some issues regarding visitation after this incident. There was no testimony of any abuse or harm to M.H. or any other incidents of abuse or violence towards A.W.
After hearing the evidence, the trial court made the following findings of fact:
I do find that ... [appellant] did, in fact, engage in a kicking motion that did connect with the child's head, did cause significant pain and redness to the child's ear, and resulted in the child crying for some time.
I find that that behavior is of the type that is likely to cause significant impairment to the child's emotional and physical well being.
I also find that the department has proven by the greater weight of the evidence that [appellant] and [M.H.'s mother] have a relationship that is prone to domestic violence. On at least two occasions, it got violent to the point that law enforcement had to make arrests, and one of those occasions, there was, most definitely, physical injury, a cut to the lip resulting in blood. [The evidence was clear that it was appellant's lip that was cut and that T.F. was arrested for this incident].

*426 The incidents of domestic violence, coupled with the inappropriate kick to the head, does constitute abuse and neglect. The kick is actual abuse, the domestic violence occurring in the presence of the child, or and/or resulting in parents being arrested, and being unavailable to care for children, I think falls within the statutory definition of neglect. If not, emotional abuse for the child, or the children, and the department has presented sufficient evidence by greater weight that [M.H.] ... will be exposed to prospective abuse, or neglect by [appellant], if, in fact, an adjudication of dependency is not made, and if, in fact, he's not required to participate under a case plan that will hopefully correct the potential for that kind of behavior in the future.
The trial court's discretion is very broad with respect to proceedings involving child welfare. The supreme court has resolved that "if upon the pleadings and evidence before the court, there is any theory or principle of law which would support the trial court's judgment," the order should be upheld. See In Re Adoption of Baby E.A.W., 658 So. 2d 961, 967 (Fla.1995)(quoting Kingsley v. Kingsley, 623 So.2d 780, 787 (Fla. 5th DCA 1993)). Nevertheless, where the evidence is legally insufficient to sustain the findings of the trial court, reversal is required.
Under chapter 39 of the Florida Statutes, a child may be found to be "dependent" if the child has been "abandoned, abused, or neglected by the child's parent or parents, legal custodians, or caregivers." § 39.01(14)(a), Fla. Stat. (Supp.1998). A child may also be found to be dependent where the court finds the child "to be at substantial risk of imminent abuse, abandonment, or neglect by the parents ...." § 39.01(14)(f), Fla. Stat. (Supp.1998).
Section 39.01(2) defines "abuse" as:
any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
A statutory definition of "harm" was added by chapter 98-403, Laws of Florida, effective October 1, 1998. According to the statutory definition, "harm" occurs:
when the parent ... or caregiver ... (a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child, any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted.
Such injury includes, but is not limited to:
4. Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury as defined in this section, or emotional injury....
§ 39.01(30), Fla. Stat. (Supp.1998). Harm also occurs when a person "[e]ngages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child." § 39.01(30)(i), Fla. Stat. (Supp.1998).
Under these definitions the trial court could properly conclude that kicking a child in the head is likely to cause significant injury and is "[i]nappropriate or excessively harsh disciplinary action that is likely to result in physical injury." § 39.01(30), Fla. Stat. (Supp.1998). It also shows that appellant was not adverse to "engag[ing] in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child." *427 § 39.01(30)(i), Fla. Stat. (Supp.1998). However, M.H. was not present during the incident, nor was the violence directed at her.
The trial court's conclusion that the incidents of domestic violence fall within the statutory requirements for a finding of dependency, however, are unsupported by the law or the evidence. The statutory definition of "harm" includes "engag[ing] in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child." § 39.01(30)(i), Fla. Stat. (Supp.1998) (emphasis added). We conclude that this portion of the definition would include harm caused by incidents of domestic violence, but it is limited to instances where the child sees or is aware of the violence occurring. See State v. Werner, 609 So.2d 585, 586 (Fla.1992)("`presence'... denotes something more than being in the immediate vicinity.... [I]t is the viewing or the awareness of an act that gives legal significance to the term")(footnote omitted).
In the instant case, there was no evidence presented at the adjudicatory hearing that the domestic violence occurred in the presence of any of the children. Further, while the statutory definition of abandonment would include leaving the child unattended while incarcerated, see section 39.01(1), Florida Statutes (Supp.1998), there was no evidence that appellant was ever arrested and incarcerated, leaving M.H. or A.W. unattended. It was the mother, T.F., who was arrested and incarcerated, and T.F. lost custody of M.H. while she was in jail.
We distinguish In Interest of S.W., 581 So.2d 234 (Fla. 4th DCA 1991), relied upon by appellant. That case was decided prior to the addition of "harm" to the definition of abuse in the statute.
Finally, as set forth above, while the trial court could properly find that appellant committed an act of abuse as to A.W., there is no nexus proven between that act of abuse and any prospective abuse to M.H. See Gaines v. Department of Children and Families, 711 So.2d 190 (Fla. 5th DCA 1998), rev. dismissed by, 728 So.2d 747 (Fla.1999). The statute permits a finding of dependency if the child is found to be at "substantial risk of imminent abuse, abandonment, or neglect by the parent ..." § 39.01(14)(f), Fla. Stat. (Supp.1998). In Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991), the court held that it is appropriate for a court to terminate the rights of children who have not been abused or neglected where those children have a sibling who has been abused. That ruling also applies to dependencies. See Denson v. Department of Health and Rehabilitative Servs., 661 So.2d 934, 935 (Fla. 5th DCA 1995); C.F. v. Department of Health and Rehabilitative Servs., 649 So.2d 295, 295-96 (Fla. 1st DCA 1995).
In Gaines, the court held that where adjudications are based upon prospective abuse, "there must be a showing in the record that the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk." 711 So.2d at 193 (citations omitted); see also Denson, 661 So.2d at 936. Those cases have centered on some mental or emotional condition of the parent which will continue, such as mental illness, drug addiction, pedophilia. The first district also relied upon a combination of a mental condition of the mother and egregious abuse of a sibling (death of child due to overdose of prescription medication) to conclude that the remaining child was dependent. See In Interest of M.T.T., 613 So.2d 575 (Fla. 1st DCA 1993). However, where a father physically abused his step child and had emotional and psychological problems but there was no evidence that he had abused his natural child, the court concluded that the evidence was legally insufficient to support a determination of dependency. See Fetters v. Department of Health and Rehabilitative Servs., 589 So.2d 959, 959 (Fla. 5th DCA 1991).
*428 In the instant case, only one incident of physical abuse to M.H.'s half sister, A.W., was reported. There was no testimony of any emotional or mental condition of appellant which would indicate a probability that the condition causing the appellant to be abusive would continue or be directed at his natural child. Even if the incidents of domestic violence are considered as evidence of an emotional condition, appellant was not shown to be the aggressor in those two incidents.
We conclude that the evidence presented at the hearing was legally insufficient to support the adjudication of dependency. We note the sparseness of that testimony. Neither T.F. nor A.W. testified at that hearing.[1] There is no indication why the Department decided not to call them. If the domestic violence was more constant and affected the children, the Department presented no evidence to suggest it. Nor did the Department present evidence to show that appellant had a violent nature and was prone to violent behavior. This is not a question of credibility of the witnesses. The trial court did not believe appellant's version of the A.W. incident, which was contrary to the testimony of A.W.'s young friend. But even if he is not credible, the Department still did not present any evidence that M.H. was at substantial risk of imminent abuse. We therefore reverse the order of the trial court adjudicating M.H. as a dependent as to appellant.
Reversed.
STEVENSON, J., and OFTEDAL, RICHARD L., Associate Judge, concur.
NOTES
[1] If A.W., a six year old, was afraid to testify, the Department could have tried to use section 90.803(23), Florida Statutes (1997), to admit her statements to investigators. We recognize that one problem with domestic violence is the reluctance of victims to testify against their abusers, but courts require evidence, and in dependency proceedings the rules of evidence apply. § 39.507(1)(b), Fla. Stat. (Supp.1998). It is still the Department's burden to prove its case.