773 So.2d 1220 (2000)
J.C. and S.C., Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D00-2322.
District Court of Appeal of Florida, Fourth District.
December 13, 2000.
Bard D. Rockenbach of Sellars, Marion & Bachi, P.A., West Palm Beach, for appellants.
Charles D. Peters, West Palm Beach, for appellee.
KLEIN, J.
This is an appeal from an order adjudicating dependency of R.J., age eleven, and W.C., his younger brother. Appellant S.C. is the mother of both children. Appellant J.C., her husband, has been the stepfather of the older child for seven years and is the father of the younger one. The trial court found that the children were abused as a result of excessive parental discipline; however, we reverse because we find no competent substantial evidence that the children had been harmed or were likely to be harmed.
Before we proceed to the merits we address one aspect of this case, which is that J.C. is the stepfather, not the biological father, of the older child. Under the facts of this case, in which the older child was living in the same household as J.C., and J.C. had the authority of the mother to discipline both children, the fact that he is only the stepfather is insignificant. Raford *1221 v. State, 25 Fla. L. Weekly D2271, ___ So.2d ___, 2001 WL 40265 (Fla. 4th DCA Jan. 17, 2001). In Raford we relied on Kama v. State, 507 So.2d 154, 156 (Fla. 1st DCA 1987), in which the court stated:
Although a person who spanks a child technically commits a battery, the parties do not dispute the well established principle that a parent, or one acting in loco parentis, does not commit a crime by inflicting corporal punishment on a child subject to his authority, if he remains within the legal limits of the exercise of that authority. (footnote omitted).
We shall refer to J.C., accordingly, as the father.
There were two things which resulted in the court finding dependency, the first having been the father's use of a belt to spank both children. The older child was spanked more because he needed more disciplining. In addition, the court was unfavorably impressed with written rules of conduct which the father required the older child to follow. The list of rules, which was taped in the child's school notebook, required him to do things like stay in his seat, finish his work, keep his mouth shut, not argue with other students, and mind his own business.
The evidence reflected that the older child had a history of misbehaving in school on a routine basis and that the family had participated in therapy. Although these rules were rather aggressive in tone, the evidence showed that they had been written with the help of the family therapist. Every day the child's teacher would evaluate his class performance in writing, and if his behavior was unacceptable, the child would receive a spanking when he got home.
After one spanking for breaking school rules, the older child called the child abuse hotline and told an officer that he had been beaten with a belt. The officer took a photograph of a bruise on his buttocks; the father was arrested, and the children were removed from the home. At the father's request, they were placed with their aunt because the mother was unable to manage on her own. The mother has, among other problems, bipolar disorder and did not testify.
The trial court found, based on the spankings with the belt, that the children were being abused by the father under section 39.01(2), Florida Statutes (1999) which provides:
"Abuse" means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health be significantly impaired. Abuse of a child includes act or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
The court also found that the mother had neglected the children by allowing the excessive discipline to continue.
Harm occurs when a child suffers "physical, mental, or emotional injury" as the result of discipline. § 39.01(30)(a), Fla. Stat. (1999). Mental injury requires proof of "a discernible and substantial impairment in the ability to function within the normal range of performance and behavior." § 39.01(44), Fla. Stat. (1999). There was no evidence in this case that either child was not functioning within his normal range. Accordingly, the question boils down to whether the children suffered physical injury.
Section 39.01(30)(a)4, Florida Statutes (1999), provides that corporal discipline may be considered excessive or abusive when it results in a physical injury, including "temporary disfigurement" or "[s]ignificant bruises or welts." In this case, there was no evidence presented that the bruises were significant or that they constituted temporary disfigurement. Nor did the trial court find such. See R.S.M. v. Department of Health and Rehabilitative Servs., 640 So.2d 1126 (Fla. 2d DCA 1994)(mere *1222 presence of bruises resulting from corporal punishment is not competent, substantial evidence of excessive corporal punishment or temporary disfigurement).
Nor was there any evidence that the children were likely to be harmed if they were returned to their home. The psychologist called by DCF, who had not interviewed the parents, said only that it was possible that the children could be harmed. That does not rise to the level of injury or harm "likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2)(emphasis added).
In Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996), the Florida Supreme Court addressed a statute authorizing a court to award grandparents visitation rights with a minor child if a court found it to be in the child's best interest. Concluding that the statute violated the Florida Constitution, our supreme court explained:
Based upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm. (emphasis added).
Id. at 1276. That standard is consistent with the standard we quoted, from section 39.01(2), in the preceding paragraph. In the present case, the evidence was insufficient to authorize state intrusion on the parents' fundamental right to discipline their children.
We therefore reverse.
FARMER and TAYLOR, JJ., concur.