821 So.2d 1145 (2002)
O.S., The Mother, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 4D01-3948.
District Court of Appeal of Florida, Fourth District.
July 3, 2002.
*1146 Kristine M. Johnson, Pembroke Pines, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, J.
The mother appeals an order declaring both of her daughters dependent, claiming that there was no competent, substantial evidence to support the trial court's ruling as to either child. We disagree and affirm.
The dependency adjudication was based upon an incident in which the mother beat her fifteen year old daughter with a wooden paddle until her buttocks was black and blue when she discovered the daughter was skipping classes and forging her teachers' signatures on progress reports. In addition, the mother was told that the daughter was failing one of her classes. After the daughter was paddled, she carved her name in her arm with a pin because she did not want to cry and was afraid if she cried, her mother would "blow up at me again." Nevertheless, at 1:30 in the morning, the mother went to the daughter's room and yelled at her that "[t]he more I sit up and think about what you're doing, the more I just want to beat the [expletive] out of you." She then hit the daughter's legs with a belt, slapped her in the face, and ripped her necklace off. The bruises on her leg were still visible at *1147 the dependency hearing six weeks later. When the mother left the room, she told the daughter that if she missed another school assignment, "she'd beat me ... within an inch of death."
The younger daughter did not witness her sister's paddling but was awakened by the mother yelling and slapping her sister during the night. She heard the mother cursing and screaming that the older daughter was a "screw-up" and a "disgrace to the family." The younger child did not go into her sister's room because she was afraid her mother would hit her too.
When the older child arrived at school the next day, she asked her teacher if she would tell her mother that she was good in class. She then started crying. She showed her teacher the bruises on her legs, and the teacher told the child's guidance counselor. The police were called, prompting the intervention of the Department of Children and Families ("DCF") and the filing of the petition for dependency. The children were removed from the mother's home and placed with their father.
At the hearing on the petition, both children testified that they had been paddled before with a wooden stick (referred to as the "Attitude Adjuster") but that the older daughter was paddled more often than the younger one. The younger daughter testified that she felt responsible for her older sister's paddlings because she did not attempt to stop them from occurring and admitted that she was afraid of her mother when she was angry. The older daughter testified that the incident prompting the DCF intervention was not the worst paddling she had received. Three months before, she had been paddled so hard she had difficulty walking. She also testified that this was the first time she mutilated herself but that she had done it again after an argument with her father.
The mother admitted she paddled her daughters but only as a last resort. She also admitted to yelling at them and telling the older daughter that she was "screwing up." But, she denied striking her daughter with a belt the night of the paddling.
At the conclusion of the hearing, the trial court found the children's testimony to be credible and the physical evidence overwhelming that the mother physically abused the older daughter, causing severe bruises, pain, and mental anguish. The court described the child's injuries to her buttocks as a "solid mass of black and blues." The court also found that the older daughter suffered emotional and mental injury as evidenced by her self-mutilation and her testimony that she tried not to cry or show signs of pain to her mother. The court further found that the abuse inflicted upon the older daughter caused severe mental anguish to the younger child, "who had to cuddle and hide in her own bedroom, fearful to step forward because of the possibility of retaliation on her." The court adjudicated both children dependent, ordered them to remain in the custody of their father, and ordered supervised visitation with their mother as therapeutically recommended.
With respect to the older daughter, the mother's main contention is that the punishment she administered to her for lying and skipping school was a single incident and not excessive enough to qualify as abuse, citing to J.C. v. Department of Children & Families, 773 So.2d 1220 (Fla. 4th DCA 2000), and R.S.M. v. Department of Health & Rehabilitative Services, 640 So.2d 1126 (Fla. 2d DCA 1994), wherein the courts held that the corporal punishment inflicted upon the children was not excessive. In J.C., the father routinely spanked his oldest child with a belt for violating the father's written list of rules. *1148 On one occasion, the spanking caused a bruise on the child's buttocks. This court held that this punishment did not qualify as excessive corporal discipline where the bruises were insignificant and did not constitute temporary disfigurement. See J.C., 773 So.2d at 1221. In addition, the father's method of corporal discipline was held not to put the child at risk of imminent abuse or cause the child to suffer significant mental impairment. See id. In R.S.M., the evidence of abuse consisted of bruising as the result of corporal punishment. The second district reversed a finding that the father was a child abuser and held that "the mere presence of bruises resulting from corporal punishment is not competent, substantial evidence of the excessive corporal punishment or temporary disfigurement that the legislature envisioned." R.S.M., 640 So.2d at 1127.
This case is distinguishable from both J.C. and R.S.M. The evidence established that the older daughter suffered substantial bruising over a majority of her buttocks, her legs, and her neck. Some of the bruises were still present six weeks later. Moreover, the older daughter testified that this was not even the most severe beating she had received. Further, the evidence of self-mutilation shows mental injury as a result of the abuse. While the mother suggests that the daughter was lying about some of the abuse, that is a credibility issue which the trial court resolved against the mother. This court will not disturb that credibility finding by the trial court. See In re D.J.W., 764 So.2d 825, 826 (Fla. 2d DCA 2000).
With respect to the younger daughter, the mother argues the state did not establish that she was at risk of physical abuse or that she was significantly impaired mentally or emotionally by the incident involving her older sister. A finding of dependency may be found upon evidence that the child is at a "substantial risk of imminent abuse, abandonment or neglect by the parent." § 39.01(14)(f), Fla. Stat. (2000). Based upon this provision, the supreme court has held that a trial court can find children who have not been abused to be dependent because of the abuse inflicted upon their siblings. See In re M.F., 770 So.2d 1189, 1194 (Fla.2000); Padgett v. Dep't. of Health & Rehabilitative Servs., 577 So.2d 565, 568-69 (Fla. 1991); accord D.H. v. Dep't. of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000) (applying same rationale to dependency cases). The evidence, however, must support a nexus between the act of abuse and any prospective abuse to another sibling. See D.H., 769 So.2d at 427.
In D.H., the evidence of abuse consisted of one isolated incident of physical abuse and incidents of domestic violence between appellant and the mother of the children, which the children were not present to observe. We held this evidence was legally insufficient to support an adjudication of dependency as to appellant's daughter, the half-sister of the victim of the abuse. See id. at 428. Relying on Gaines v. Department of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998), we noted that the DCF failed to present any evidence that appellant had a mental or emotional condition that would indicate the abuse was likely to continue and to be directed at his daughter. In addition, the DCF failed to present evidence establishing appellant's violent nature or that he was prone to act violently. See D.H., 769 So.2d at 428. Similarly, in regard to a finding of dependency as to a sibling based upon a parent's sex act on another child, the supreme court has held,
A simple showing by DCF that a parent committed a sex act on one child does not by itself constitute proof that the *1149 parent poses a substantial risk of imminent abuse or neglect to the child's sibling, as required by the statute. See § 39.01(11), Fla. Stat. (1997). While the commission of such an act may be highly relevant, it is not automatically dispositive of the issue of dependency. A court instead should focus on all the circumstances surrounding the petition in each case.
M.F., 770 So.2d at 1194 (footnote omitted).
In this case, the severe beating was the mother's idea of corporal discipline, which she had administered to both children. Thus, it is likely the mother will continue to employ the same form of excessive punishment on the younger child. Although the younger child was not paddled as often as her sister, that was because the older child would "take the blame" for her younger sister and would receive the paddling instead of her. As such, if the older child is no longer in the home to "take the blame," it is likely the younger child will receive the brunt of the mother's rage. In addition, the court found that the younger child has suffered emotional harm from the mother's excessive disciplining, noting the child was afraid of the mother. We conclude that this evidence established a nexus between the act of abuse to the older child and the very real probability of prospective abuse to the younger child without intervention of services.
We reject the remaining contentions raised by the mother. She alleges that the denial of her request for a continuance was error. However, the decision to grant or deny a motion for continuance is within the trial court's discretion and will not be disturbed absent an abuse of discretion. See C.J. v. Dep't. of Children & Families, 756 So.2d 1108, 1109 (Fla. 3d DCA 2000). No abuse of discretion has been shown in this case. The mother disputes the trial court's determination that she committed perjury in claiming she never hit her daughter with a belt. That statement was merely a finding that the mother's testimony was not credible and that the trial court believed the mother lied in her testimony. This finding was within the court's purview when making credibility determinations and was not a criminal adjudication of perjury.
Affirmed.
STEVENSON and HAZOURI, JJ., concur.