898 So.2d 195 (2005)
P.C., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 2D04-1794.
District Court of Appeal of Florida, Second District.
March 11, 2005.
*196 Antonio R. Arano of Law Office of Antonio R. Arano, St. Petersburg, for Appellant.
Bernie McCabe, State Attorney, and Kari Marsland-Pettit, Assistant State Attorney, Clearwater, for Appellee.
NORTHCUTT, Judge.
P.C., the mother of four children, appeals an order adjudicating her children dependent. We reverse because the evidence did not support the trial court's findings of abandonment and abuse.
The relevant events occurred during slightly more than one month between Christmas 2003, when P.C. and her children moved in with Beverly Bambery and her son, and February 11, 2004, when the Department of Children and Family Services filed a petition to shelter P.C.'s children. Bambery and P.C. were friends for several years before P.C. moved in. They agreed that Bambery, who does not work outside the home, would babysit for P.C. while she was at work, and P.C. would help with the household expenses.
Beginning in January, P.C. obtained a job working nights until 2 a.m. Bambery testified that P.C. would leave for work without informing Bambery that she was leaving, or if she told Bambery she was leaving, she would not say when she was coming back. P.C. might return from work at 3 a.m., but sometimes she would not arrive home until 8 or 9 a.m. or even *197 noon. However, there was no testimony that the mother's schedule caused Bambery to shoulder additional responsibilities for getting the children to school or that it otherwise disrupted the children's schedule. Bambery also testified that P.C. was not home to meet the children after school, but she provided only one specific instance, occurring on the day that the children were sheltered. The child protective investigator testified that P.C. left the children with Bambery beyond work hours. The children, however, were never left without Bambery present.
Bambery testified that P.C. admitted using cocaine and spending $200 to $300 on the drug. But Bambery never saw any cocaine supplies in the house. P.C. acknowledged to the child protective investigator that she had used cocaine in early February. There was no evidence, however, that P.C. used cocaine in the children's presence.
According to the investigator's testimony, P.C. also admitted throwing a plastic orange juice container in the direction of the oldest child and hitting her in the forehead; P.C. said that she threw the container in frustration because the child was refusing to do the dishes after repeated requests. The investigator never saw any marks or bruises on the children. Bambery once saw red marks on the oldest child, but she never saw any bruises. Bambery and the investigator both testified that the housing was adequate and that the children received food and medical attention.
Based on the testimony by Bambery and the investigator, and rejecting the mother's testimony as not credible, the trial court found that the mother abused cocaine, inflicted physical abuse on the oldest child, and abandoned the children. Based on these findings, the court granted the dependency petition.
A dependent child is one who is found "[t]o have been abandoned, abused, or neglected by the child's parent" or "[t]o be at substantial risk of imminent abuse, abandonment, or neglect." § 39.01(14)(a), (f), Fla. Stat. (2003). Abandonment is defined as "a situation in which the parent . . ., while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations" and it includes only marginal efforts "to support and communicate with the child . . . that do not evince a settled purpose to assume all parental duties[.]" § 39.01(1).
In this case, the evidence did not support a finding that the mother abandoned the children because there was no showing that she failed to provide for their support or failed to communicate with them. Although the evidence showed that the mother and Bambery had disagreements about their childcare responsibilities, the children were never left unattended. See A.H. v. Dep't of Children & Family Servs. (In re W.H.), 846 So.2d 636 (Fla. 2d DCA 2003) (rejecting abandonment as basis for dependency when mother placed children with grandparents while she worked out personal problems, called and visited the children, and provided support); S.B. v. Dep't of Children & Family Servs. (In re E.B.), 834 So.2d 415 (Fla. 2d DCA 2003) (concluding that mother's failure to financially support child for two months that he stayed with grandmother did not constitute abandonment because mother tried to retrieve the child from grandmother's home, contacted the child, and gave authorization for medical treatment if necessary). Therefore, we conclude that the evidence did not support a dependency adjudication based on abandonment.
Abuse is defined to mean

*198 any willful act . . . that results in physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. . . . Corporal discipline of a child by a parent . . . for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
§ 39.01(2). Relevant to this case, harm to a child's health or welfare occurs when any person inflicts physical, mental, or emotional injury, § 39.01(30)(a), or uses inappropriate or excessively harsh disciplinary action that is likely to result in physical, mental, or emotional injury, § 39.01(30)(a)(4). "Corporal discipline may be considered excessive or abusive when it results in" specified or similar injuries such as sprains, fractures, brain damage, asphyxiation, burns, cuts, disfigurement, or significant bruises or welts. Id.
Here, the evidence showed merely that the mother threw an empty plastic jug at the oldest child on one occasion and physically disciplined her on another occasion. There was no suggestion that the child required medical attention or that her physical, mental, or emotional health was significantly impaired. See In re W.P., 534 So.2d 905 (Fla. 2d DCA 1988) (holding that physical abuse to support dependency adjudication was not shown by evidence that mother pulled child's hair and father slapped child's face, leaving a mark that did not require medical attention); see also J.C. v. Dep't of Children & Families, 773 So.2d 1220 (Fla. 4th DCA 2000) (holding that bruises inflicted with belt did not constitute excessive or abusive corporal discipline to support dependency).
Harm to a child also occurs when a parent engages in "[c]ontinued chronic and severe use of a controlled substance . . . when the child is demonstrably affected by such usage[.]" § 39.01(30)(g)(2). In this case, the evidence did not support a finding that the mother's use was chronic or severe or that the children were affected. See B.C. v. Dep't of Children & Families, 846 So.2d 1273 (Fla. 4th DCA 2003) (concluding that father's alcohol and drug addictions did not support dependency adjudication when evidence failed to show that child suffered adverse consequences).
We recognize that the burden of proof in a dependency matter is only by a preponderance of the evidence, § 39.507(1)(b), and that the mother may have an anger management problem and has admitted using illegal drugs. Nevertheless the evidence simply did not support a dependency adjudication, in particular because there was no record evidence of any adverse impact on the children from any of P.C.'s actions. Accordingly, we must reverse.
Reversed.
ALTENBERND, C.J., and CANADY, J., Concur.