908 So.2d 585 (2005)
A.A., Mother of C.M., a Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D04-3674.
District Court of Appeal of Florida, Fifth District.
August 12, 2005.
*586 Ryan Thomas Truskoski, of Ryan Thomas Truskoski, P.A., Orlando, for Appellant.
Charles D. Peters, Orlando, for Appellee.
SAWAYA, J.
The issue we must resolve is whether substantial competent evidence exists in the record to support the trial court's dependency order finding that the corporal discipline administered to the child, C.M., by his brother, at the direction of the mother, A.A., was sufficiently excessive or abusive to cause harm. We reverse.
The record reveals that C.M., a child prescribed several medications for various psychiatric disorders, is a member of a family consisting of a mother with three children, including C.M. Reading the allegations made by the Department, one might get the impression that the mother is a termagant who regularly beats her children, especially C.M., and who, because of arthritic hands, has delegated that rather unpleasant task to her oldest son. The mother contends, however, that she is a college graduate, school teacher, and parent burdened with the unenviable responsibility of raising an ungovernable child. Regardless of how the Department attempts to characterize the mother, we must determine, in accordance with the appropriate standard of review, whether the trial court erred in entering the dependency order that the mother now assails. The standard of review we must apply requires that we determine whether there is substantial competent evidence to support the trial court's determination that the child is dependent. M.N. v. Department of Children & Families, 826 So.2d 445 (Fla. 5th DCA 2002).
The evidence reveals that when C.M. reported to school on February 11, 2004, Sue McClellan, the SAFE (Student Assistance and Family Empowerment) program coordinator, noticed that C.M. was not himself, did not move around as much, and kept leaning forward in his chair. After she discovered red elongated marks on C.M.'s back, Ms. McClellan placed a call to the abuse hotline. A Department investigator went to the school and examined the bruises on C.M.'s back and shoulder. A Child Protection Team member, Deborah Scott, also examined C.M. C.M. reported that his nineteen-year-old brother had beaten him at the request of their mother. The evidence also revealed that earlier that day, C.M. had been in a fight and was beaten in the head by two other children who accused C.M. of stealing their bong and pipe. A video of C.M. skateboarding and falling was introduced into evidence to show that C.M. had actually incurred a number of bruises from skateboard falls *587 the prior week. When C.M. viewed pictures taken of his bruises, he stated that all of the bruises except one were incurred in skateboarding accidents. Ms Scott's opinion was that some of the bruises were consistent with knuckles and a belt and that the others were consistent with falling from a skateboard.
When questioned about the alleged beating, the older brother stated that it was administered when he learned that a friend's father had accused C.M. of breaking into his house. When the brother got home and found C.M. yelling and cursing at his mother and attempting to hit her, he took C.M. outside and hit C.M. with his fists. The brother testified that C.M. would cause "major mayhem" and was in need of discipline. The brother also testified that C.M. on occasion would simply leave home, wander around, vandalize property, break into homes, and basically do whatever he wanted without remorse or belief that his conduct was wrong. After hearing all of the evidence and testimony, the trial judge declared C.M. dependent.
A child may be adjudicated dependent if the court finds by a preponderance of the evidence that the child has been abused. § 39.507(1)(b), Fla. Stat. (2004); P.M. v. Department of Children & Families, 865 So.2d 8 (Fla. 5th DCA 2003); M.N. "Abuse" is defined as "any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2), Fla. Stat. (2004). The trial court found C.M. was abused because "the mother allowed corporal punishment to be administered on him at the hands of his brother...."
Long ago, the Florida courts recognized the common law principle, which remains with us to the present day, that parents may administer corporal discipline to their children; provided, however, that the discipline is reasonable. See Marshall v. Reams, 32 Fla. 499, 14 So. 95, 97 (1893) ("We do not desire to be understood as denying the right of a parent, or one standing in loco parentis, to moderately chastise for correction a child under his or her control and authority ...."); see also Raford v. State, 828 So.2d 1012, 1021 n. 5 (Fla.2002) ("It appears that the common law recognized a parent's right to discipline his or her child in a `reasonable manner.'") (citation omitted). The very difficult undertaking of attempting to draw a clearly discernible line between reasonable corporal discipline and child abuse has been left to the Legislature. Raford. Rather than allow the concept of reasonable corporal discipline to linger in the case law as a common law principle, the Legislature incorporated it into Chapter 39, Florida Statutes, which provides, in pertinent part, that "[c]orporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child." § 39.01(2), Fla. Stat. (2004). We must, therefore, determine whether there is substantial competent evidence that C.M. was harmed by the corporal discipline administered to him.
A child's health or welfare may be harmed when any person "[i]nflicts or allows to be inflicted upon the child physical, mental, or emotional injury." § 39.01(30)(a), Fla. Stat. (2004). The injury contemplated by this statute may include "[i]nappropriate or excessively harsh disciplinary action ...." § 39.01(30)(a)(4), Fla. Stat. (2004). Corporal discipline is considered inappropriate or excessively harsh when the following injuries result:
a. Sprains, dislocations, or cartilage damage.
b. Bone or skull fractures.
c. Brain or spinal cord damage.

*588 d. Intracranial hemorrhage or injury to other internal organs.
e. Asphyxiation, suffocation, or drowning.
f. Injury resulting from the use of a deadly weapon.
g. Burns or scalding.
h. Cuts, lacerations, punctures, or bites.
i. Permanent or temporary disfigurement.
j. Permanent or temporary loss or impairment of a body part or function.
k. Significant bruises or welts.
§ 39.01(30)(a)4., Fla. Stat. (2004). Of this list of horribles, permanent or temporary disfigurement under subsection (i) and significant bruises or welts under subsection (k) are the only injuries C.M. may have suffered at the hands of his disciplinarian.
Having reviewed the record before us, we conclude that there is a lack of substantial competent evidence to support the trial court's finding of dependency. We see no evidence that the brother administered excessive or abusive corporal discipline to C.M. because there is no evidence that C.M. was injured by significant bruises or welts or that he suffered any permanent or temporary disfigurement. See J.C. v. Department of Children & Families, 773 So.2d 1220 (Fla. 4th DCA 2000) (recognizing that the fact that some bruising may occur as a result of corporal punishment does not, alone, constitute competent substantial evidence that the corporal punishment was excessive or abusive); R.S.M. v. Department of Health & Rehabilitative Servs., 640 So.2d 1126, 1127 (Fla. 2d DCA 1994) (same); see also J.C. (holding that where the father routinely spanked his oldest child with a belt for violating the father's written list of rules, and on one occasion had caused a bruise on the child's buttocks, the punishment did not qualify as excessive corporal discipline because the bruises were insignificant, did not constitute temporary disfigurement, and did not put the child at risk of imminent abuse or cause the child to suffer significant mental impairment); In Interest of S.W., 581 So.2d 234 (Fla. 4th DCA 1991).
It is obvious from the record that C.M. has been an enormous challenge to parent and this certainly explains the heightened response from the mother and brother as they attempted to instill some semblance of discipline in C.M. and put an end to his feral behavior. The law is clear that difficult children and the very serious problems they often present to their parents do not provide an excuse to inflict corporal punishment that results in harm to the child. Here, the Department simply failed to submit substantial competent evidence to establish by a preponderance of the evidence that the heightened response by the mother and brother to C.M.'s misbehavior rose to the level of excessive or abusive corporal punishment required by the Legislature to form a basis for an adjudication of dependency. Accordingly, we reverse the order of dependency.
REVERSED.
PLEUS, C.J. and THOMPSON, J., concur.