ALTENBERND, Judge.
L.M.C. appeals an order adjudicating her two-year-old child, O.C., dependent, based primarily upon a bruise the child received when she was approximately ten months old. At the time the bruise occurred, L.M.C. was incarcerated and the *625 child was residing with a couple chosen by L.M.C. to care for the child. Because this unexplained incident of bruising is insufficient to support a finding of dependency, we reverse.[1]
L.M.C. is currently incarcerated and is not expected to be released until 2007. In December 2003, during her incarceration, L.M.C. gave birth to O.C. L.M.C. asked a close friend, C.G., to care for the child until she was released from prison. C.G. resides with his fiancee and their child, who is approximately the same age as O.C. After a limited background check of the couple, facilitated by the Department of Corrections, O.C. was placed in the care of C.G. and his fiancée. O.C. lived with the couple and regularly attended daycare until she was ten months old.
On November 18, 2004, the Department of Children and Families received an abuse report concerning O.C. The report contained a number of serious allegations. It alleged that the child had been sick and vomiting for over one month, with the vomit smelling of feces, but the caregivers had not provided medical care; that “on more than one occasion, [the child] has not had any food”; that there was no.food in the house and would not be any food in the house for four days; that the child was not placed in a car seat during transportation; that the caregivers could not afford to buy food for the child; and that the child had an unexplained bruise on her bottom. The source of this report has remained anonymous, as provided for under Florida law. See § 39.202(5), Fla. Stat. (2004).
The report was investigated immediately. A child protective investigator went to the caregivers’ home. That investigator found the home hazard-free and stocked with an appropriate amount of food. In fact, the caregivers had recently purchased groceries. The investigator found the child in good health and later verified with the child’s physician that the child had received regular and appropriate medical care through the caregivers. The investigator did, however, observe an unexplained bruise on the buttocks of O.C. The bruise was four inches across and orange in color with some areas darker than others. The caregivers denied knowing anything about the bruise or how it occurred. The child had been at daycare for the majority of that day, and the caregivers said they had not noticed a bruise that morning when preparing the child for daycare. There was no indication when or how the bruise occurred.
When the caregivers were asked how they disciplined the child, each responded that they might give the child “a few taps on the butt” or a “spank” “over the diaper.” The caretakers admitted that they were of limited means and sometimes had difficulty meeting the financial needs of both children but explained that they were making do. The caretakers’ own child was examined and showed no signs of abuse.
The child protective investigator removed O.C. from the home, filed a petition to shelter the child, and placed the child in foster care. The investigator admitted at the dependency trial that she did this solely as a result of the unexplained bruising on the child’s buttocks. No other action was taken regarding the caretakers or their child. The Department then filed a petition for dependency against L.M.C.
L.M.C. contested the dependency. At the trial, she expressed confusion as to why the child could not remain in the care of the caregivers chosen by her rather *626 than in foster care. The only witnesses presented by the Department were the pediatric nurse practitioner from the Child Protection Team who had examined the child and described the bruise and the child protective investigator who investigated the abuse. There was no evidence to support any of the allegations in the initial report other than the unexplained bruise on the child’s buttocks. Indeed, not only were a majority of the initial allegations unsupported by evidence, some were actually refuted by the evidence the Department presented.
At the conclusion of the evidence, L.M.C. argued that there was no competent, substantial evidence to support an adjudication of dependency. The trial judge rejected L.M.C.’s argument and ruled that the child was dependent. In doing so, the trial judge specifically relied upon the allegations in the petition that were not supported by evidence at the hearing.
This case is a bit unusual because it involves an allegation of dependency based not upon the actions of a parent, but upon the actions of a caregiver to whom the parent entrusted the child. The Department did not assert or argue that L.M.C. knowingly placed the child with an unsafe caregiver in an unsafe environment, thus herself creating the situation causing a dependency. Although the Department sought to prove that the caregiver or his fiancée abused or neglected the child, neither the caregiver nor his fiancée are parties to this action. Certainly, if the Department were faced with a caregiver who abused, abandoned, or neglected a child and a parent who was unable to care for the child or to select an appropriate alternate placement, a dependency action may be required. In this case, however, the evidence presented by the Department did not establish that either the caregiver or L.M.C. abused, abandoned, or neglected the child. The adjudication of dependency must therefore be reversed.
In order to adjudicate a child dependent, a trial court must find by the preponderance of the evidence that the child has been abused, abandoned, or neglected or is at risk of imminent abuse, abandonment, or neglect. M.J.S. v. Dep’t of Children & Family Servs. (In re D.J.W.), 764 So.2d 825 (Fla. 2d DCA 2000). An adjudication of dependency will be upheld where competent, substantial evidence supports the trial court’s findings of fact. D.R. v. Dep’t of Children & Family Servs., 898 So.2d 254, 255 (Fla. 3d DCA 2005). Here, however, there was no allegation that this child had been abandoned and no competent, substantial evidence to support a finding that the child was a victim of “abuse” as defined in section 39.01(2) or “neglect” as defined in section 39.01(45).
Pursuant to section 39.01(2), “abuse” of a child is “any willful act ... that results in any physical, mental, or sexual ... injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.” Pursuant to section 39.01(30)(a), “harm” to a child’s health or welfare can occur when any person
[i]nflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted.
This statute defines injuries to specifically include sprains, bone or skull fractures, *627 brain or spinal cord damage, injury to internal organs, suffocation, drowning, burns, cuts, permanent or temporary disfigurement, and permanent or temporary loss or impairment of a body part or function. See § 39.01(30)(a)(1)(a)-(j). It also proscribes “[ljeaving a child without adult supervision or arrangement appropriate for the child’s age or mental or physical condition, so that the child is unable to care for the child’s own needs.” § 39.01(30)(a)(3). Finally, section 39.01(30)(a)(4) provides that “injury” includes the following elements:
Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury as defined in this section, or emotional injury. The significance of any injury must be evaluated in light of the following factors: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Corporal discipline may be considered excessive or abusive when it results in any of the following or other similar injuries:
a. Sprains, dislocations, or cartilage damage.
b. Bone or skull fractures.
c. Brain or spinal cord damage.
d. Intracranial hemorrhage or injury to other internal organs.
e. Asphyxiation, suffocation, or drowning.
f. Injury resulting from the use of a deadly weapon.
g. Burns or scalding.
h. Cuts, lacerations, punctures, or bites.
i. Permanent or temporary disfigurement.
j. Permanent or temporary loss or impairment of a body part or function.
k.Significant bruises or welts.
Pursuant to section 39.01(45), “neglect”
occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability. unless actual services for relief have been offered to and rejected by such person.
The evidence presented to the dependency court did not establish that O.C. was a victim of “neglect” as defined in section 39.01(45). In addition, the circumstances described by the Department would qualify as “abuse” only if the dependency court could determine by a preponderance of the evidence that one of the caregivers inflicted or allowed to be inflicted upon the child “inappropriate or excessively harsh disciplinary action that is likely to result in” injury to the child, see § 39.01(2), (30)(a)(4), perhaps consisting of “significant bruises or welts,” see § 39.01(30)(a)(4)(k).
- Case law has established, however, that a single incident of a serious bruise on the buttock of a child, perhaps caused by corporal punishment, will not support a finding of dependency. See T.G. v. Dep’t of. Children & Families, 927 So.2d 104 (Fla. 1st DCA 2006) (holding single instance of corporal discipline meted out by the mother, to one of five children resulting in bruise that was not significant and did not require medical attention did not support finding of dependency); A.A. v. Dep’t of Children & Families, 908 So.2d 585 (Fla. 5th DCA 2005) (holding dependency *628 was improper based on evidence that mother had her older son discipline her difficult younger child, and discipline resulted in punches that left bruises or welts on child’s back and shoulder); J.C. v. Dep’t of Children & Families, 773 So.2d 1220 (Fla. 4th DCA 2000) (finding stepfather’s routine of spanking his oldest child with a belt, which on one occasion caused a bruise on the child’s buttocks, did not qualify as excessive corporal discipline because the bruises were insignificant, did not constitute temporary disfigurement, and did not put the child at risk of imminent abuse or cause the child to suffer significant mental impairment); R.S.M. v. Dep’t of Health & Rehabilitative Servs., 640 So.2d 1126 (Fla. 2d DCA 1994) (mere presence of bruises resulting from corporal punishment is not competent, substantial evidence of excessive corporal punishment or temporary disfigurement); In re S.W., 581 So.2d 234 (Fla. 4th DCA 1991) (holding that evidence was insufficient to support finding of abuse based upon a single incident in which mother repeatedly hit child with a belt and child was observed with recent bruises, including bruises to the face which may have been caused when child tried to run away, none of which required medical treatment); In re W.P., 534 So.2d 905 (Fla. 2d DCA 1988) (finding evidence that father slapped his child on the face and left a mark insufficient to support a finding of dependency because the mark did not require medical attention). Usually, some evidence of a pattern of excessive punishment or a single punishment resulting in a more serious injury is required. See, e.g., J.L. v. Dep’t of Children & Families, 899 So.2d 1254 (Fla. 4th DCA 2005) (dependency was supported by finding that father hit naked child with a belt twice within same week as punishment, leaving bruising and welts, and intended to continue such punishments); O.S. v. Dep’t of Children & Families, 821 So.2d 1145, 1148 (Fla. 4th DCA 2002) (finding mother’s paddling of daughter excessive as it left bruises over majority of daughter’s buttocks, legs, and neck; some of the bruises persisted for more than six weeks; the child testified that this was not even the most severe beating she had received; and there was evidence of daughter’s self-mutilation reflecting a mental injury resulting from abuse).
Admittedly, the cited cases address children in the care of a parent who are disciplined by the parent. Nevertheless, if a single incident of bruising would not support a finding of dependency if it occurred in the mother’s care, it is difficult to see how it could be characterized as the “abuse” necessary to support a finding of dependency when it occurs in the care of people entrusted by the mother to care for the child.
Parents have a fundamental liberty interest in determining the care and upbringing of their children “free from the heavy hand of government paternalism.” Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 570 (Fla.1991) (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). This liberty interest “does not evaporate simply because they have not been model parents.” Santosky, 455 U.S. at 753, 102 S.Ct. 1388. Parents who find themselves temporarily unable to care for their child are generally permitted to choose appropriate caregivers so long as neither the parent nor the caregiver responsibly chosen by the parent abandons, abuses, or neglects the child, thus justifying the intervention of the State to protect the child’s interest. See, e.g., Adoption Miracles v. S.C.W. (In re S.N.W.), 912 So.2d 368, 373 n. 4 (Fla. 2d DCA 2005); A.H. v. Dep’t of Children & Family Servs. (In re W.H.), 846 So.2d 636 (Fla. 2d DCA 2003); J.R.S. v. Dep’t of Children & Families (In re *629 Z.J.S.), 787 So.2d 875, 879 (Fla. 2d DCA 2001) (Northeutt, J., concurring). Here, there was no evidence that L.M.C. or the caregiver chosen by her to care for her child during her incarceration abused, abandoned, or neglected the child. Under these circumstances, there was no basis upon which to find O.C. was dependent. See A.H., 846 So.2d 636. We therefore reverse the order adjudicating O.C. dependent.
At the dependency trial, C.G., the person to whom L.M.C. entrusted the care of O.C., testified on L.M.C.’s behalf. L.M.C. made clear that she wanted the child returned to the care of C.G. and his fiancée. Although it is not clear from our record, it appears that C.G. was willing to continue to care for O.C. if the child was not declared dependent. Because we are unable to determine whether O.C. is able to return to the care of C.G., we remand the matter to the circuit court. If C.G. is able to care for O.C. and L.M.C. remains amenable to that placement, or if L.M.C. has an alternative appropriate placement for the child, the dependency action shall be dismissed. If no appropriate placement is currently available for the child, the Department may amend its petition for dependency and proceed accordingly.
Reversed and remanded.
NORTHCUTT and SILBERMAN, JJ., Concur.

. The father of the child, who apparently did not contest L.M.C.'s placement of the child with a nonrelative caregiver, did not contest the dependency of the child. He is thus not a party to this appeal.