940 So.2d 571 (2006)
In the Interest of S.T., D.Y., D.Y., and D.Y., minor children.
M.C., Appellant,
v.
Department of Children and Family Services, Appellee.
No. 2D06-964.
District Court of Appeal of Florida, Second District.
October 27, 2006.
*572 Norman A. Palumbo, Jr., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Christopher Perone, Assistant Attorney General, Tampa, for Appellee.
FULMER, Chief Judge.
M.C., the Mother, appeals from the trial court's order adjudicating her four children dependent. Because we conclude that the evidence was legally insufficient to support the adjudication, we reverse the trial court's Order of Dependency Adjudication and Disposition as to the Mother.
Facts and Procedural History
The Mother and her oldest child, D.Y., apparently had a difference of opinion over what he was to wear to school on June 14, 2005. D.Y. was eleven years old at the time. He was still angry when his Mother dropped him and his siblings off at school, so he slammed the van door closed. The Mother exited the van, and the two had a confrontation. The testimony at the adjudicatory hearing varies as to what happened next. The Mother admitted to attempting to slap D.Y. or at least to making a motion as if to slap him. She said she picked him up around the chest and let him go, whereupon he fell to the ground and lay there as was his habit when he got angry. A man from the neighborhood saw a "young lady" throw a child on the grass and then beat him with a fist. A teacher's aide saw a woman kick a boy who was lying on the ground. The Department of Children and Family Services' child protective investigator (CPI) testified that D.Y. had a bruise on the top of his forehead, and the police officer who was called to investigate the incident said that D.Y. had a swollen cheek. All four siblings were sheltered as a result of the incident, and the Mother was arrested for child abuse. The disposition of any criminal action against the Mother was not disclosed in the record on appeal.
The Department filed a Petition for Adjudication of Dependency alleging two counts against the Mother: (1) abuse against D.Y., pursuant to section 39.01(2), Florida Statutes; and (2) prospective abuse as to the other three children, pursuant to section 39.01(14)(f).[1] The trial court held an adjudicatory hearing, at which the testimony was devoted to the incident with D.Y.; there was no testimony concerning the other three children. The court found that the Department had proved by a preponderance of the evidence that all four children were dependent.
Discussion
The Department is required to establish a child's state of dependency by a preponderance of the evidence. § 39.507(1)(b), Fla. Stat. (2004); Fla. R. Juv. P. 8.330(a). "A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence *573 in the record." In re M.F., 770 So.2d 1189, 1192 (Fla.2000).
We examine first the trial court's adjudication of D.Y. as dependent. A "`[c]hild who is found to be dependent' means a child who, pursuant to [chapter 39], is found by the court . . . [t]o have been . . . abused . . . by the child's parent or parents or legal custodians." § 39.01(14)(a). The statutory definition of "abuse" can be parsed into two elements: abuse refers to "[1] any willful act or threatened act that results in any physical, mental, or sexual injury or harm [2] that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2). Additionally, "[a]buse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child." Id.
Within the first element of the definition of abuse, only the "physical injury" and "harm" prongs are relevant in light of the evidence presented in this case. "`Physical injury' means death, permanent or temporary disfigurement, or impairment of any bodily part." § 39.01(52). The definition of "harm" is more extensive:
"Harm" to a child's health or welfare can occur when any person:
(a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Such injury includes, but is not limited to:
1. Willful acts that produce the following specific injuries:
a. Sprains, dislocations, or cartilage damage.
b. Bone or skull fractures.
c. Brain or spinal cord damage.
d. Intracranial hemorrhage or injury to other internal organs.
e. Asphyxiation, suffocation, or drowning.
f. Injury resulting from the use of a deadly weapon.
g. Burns or scalding.
h. Cuts, lacerations, punctures, or bites.
i. Permanent or temporary disfigurement.
j. Permanent or temporary loss or impairment of a body part or function.
As used in this subparagraph, the term "willful" refers to the intent to perform an action, not to the intent to achieve a result or to cause an injury.
. . . .
4. Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury as defined in this section, or emotional injury. The significance of any injury must be evaluated in light of the following factors: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. Corporal discipline may be considered excessive or abusive when it results in any of [the injuries listed in paragraph (1)(a)-(j) or]:
k. Significant bruises or welts. *574 § 39.01(30).[2]
As for the "physical injury" prong of the first element of "abuse," the only potentially applicable type of injury under section 39.01(52) in light of the evidence is "temporary disfigurement." However, the courts have indicated that bruising alone does not constitute the temporary disfigurement contemplated by the statute. For example, we concluded in R.S.M. v. Department of Health & Rehabilitative Services, 640 So.2d 1126, 1127 (Fla. 2d DCA 1994), that "the mere presence of bruises resulting from corporal punishment is not competent, substantial evidence of the excessive corporal punishment or temporary disfigurement" contemplated by the child protective services statutes in effect at the time.[3]See also J.C. v. Dep't of Children & Families, 773 So.2d 1220, 1221 (Fla. 4th DCA 2000) (no evidence that bruises resulting from spanking with a belt were significant or that they constituted temporary disfigurement); A.A. v. Dep't of Children & Families, 908 So.2d 585, 588 (Fla. 5th DCA 2005) ("no evidence that the [child's] brother administered excessive or abusive corporal discipline to [the child, at the mother's behest] because there is no evidence that [the child] was injured by significant bruises or welts or that he suffered any permanent or temporary disfigurement"). On the other hand, in O.S. v. Department of Children & Families, 821 So.2d 1145, 1147-48 (Fla. 4th DCA 2002), the court distinguished J.C. and R.S.M., implicitly finding temporary disfigurement when bruising from paddling lasted six weeks.
Here, the only evidence concerning injury to D.Y. was testimony from the CPI and a police officer who interviewed D.Y. on the day of the incident and noticed a bruise on his forehead and swelling on his cheek. There was no evidence that these conditions lasted beyond the day of the incident. As such, the evidence was not sufficient to prove "temporary disfigurement."
The other pertinent prong within the first element of the definition of abuse is "harm," § 39.01(30). The only potentially applicable injuries under the definition of "harm" are "temporary disfigurement" and "significant bruises or welts." § 39.01(30)(a)(1)(i), (4)(i), (k). As already noted, we conclude from our review of the case law that D.Y.'s injuries did not constitute temporary disfigurement. And, while we acknowledge that there was evidence of bruising, there was no indication here that D.Y.'s bruise or swelling was "significant"; indeed, the trial court characterized the latter as "slight swelling." Compare J.C., 773 So.2d 1220, and A.A., 908 So.2d 585, with O.S., 821 So.2d 1145.
*575 Further, the court was required to consider the following factors if it was using either the "willful act" or "disciplinary action" provisions of the definition of "harm": "the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted." § 39.01(30)(a), (a)(4). Although the court's order alludes indirectly to the child's age and mentions the location of the bruise and swelling, it failed to mention any prior injuries (no doubt because there was no testimony concerning such) and failed to address how any of the factors related to whether there was truly physical injury or excessive discipline.
Finally, as for the second element of the definition of "abuse"that the physical injury or harm caused or would be likely to cause "the child's physical, mental, or emotional health to be significantly impaired"the record discloses no evidence that could be taken as demonstrating actual or likely significant impairment. As such, the evidence presented was insufficient to prove either element of the definition of "abuse."
We now turn to the trial court's finding that D.Y.'s three siblings were dependent. The Department's second count alleged that "[a]s a result of the abuse to [D.Y.], the other . . . children are at substantial risk of imminent abuse, abandonment, or neglect by the [M]other." The petition cites to section 39.01(14)(f), which provides that a "[c]hild who is found to be dependent" includes one who is found by the court "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians."
Dependency can be found in the context of prospective abuse based on proof of abuse of other children, Denson v. Dep't of Health & Rehabilitative Servs., 661 So.2d 934, 935 (Fla. 5th DCA 1995), in particular siblings, In re C.M., 844 So.2d 765, 766 (Fla. 2d DCA 2003). However,
the evidence must demonstrate a nexus between the abuse and any prospective abuse to another sibling. O.S. v. Dep't of Children & Families, 821 So.2d 1145 (Fla. 4th DCA 2002); D.H. v. Dep't of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000). Generally, this nexus is established when the parent has a mental or emotional condition that will continue, such as mental illness, drug addiction, or pedophilia, and which will make it highly probable that in the future the parent will abuse or neglect another child. D.H., 769 So.2d at 427. See Gaines v. Dep't of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998) (stating that to establish nexus the Department must produce evidence that the parent's behavior was beyond his control, was likely to continue, and placed the children at risk).
C.M., 844 So.2d at 766; see also M.F., 770 So.2d at 1194 ("A simple showing by [the Department] that a parent committed a sex act on one child does not by itself constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling, as required by the statute."). In short, case law construing the prospective abuse form of dependency indicates that the mere fact that a parent has abused one child does not, alone, constitute sufficient evidence for a finding of dependency as to another child with respect to that parent.
Here, because we have concluded that the evidence to support a finding of dependency as to D.Y. based on abuse was insufficient, there can be no nexus to prospective abuse of D.Y.'s siblings. Furthermore, even if the single incident with D.Y. constituted abuse, no evidence was presented to demonstrate a nexus between that abuse and prospective abuse of the *576 three siblings. No evidence was presented that the Mother suffered from a "mental or emotional condition [that would] continue," D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000), or that her behavior was beyond her control, was likely to continue, and placed the children at risk, Gaines v. Dep't of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998). Indeed, beyond the one incident, no evidence of signs of past abuse on D.Y.'s body was presented, nor was there any evidence of abuse of D.Y.'s three siblings, whether from observations of witnesses or physical examination. Additionally, no evidence was presented of the family's disciplinary practices or observations of the family's lifestyle in general by neighbors, teachers, or counselors.
Because the evidence was legally insufficient to establish either existing abuse as to D.Y. or prospective abuse as to the three siblings, we reverse the trial court's Order of Dependency Adjudication and Disposition as to the Mother.
Reversed.
VILLANTI and WALLACE, JJ., Concur.
NOTES
[1] The petition included counts against the children's fathers, alleging abandonment. The fathers were not involved in the adjudicatory hearing and are not parties to this appeal.
[2] We realize that our detailed analysis of the relevant statutes may appear to be somewhat pedantic. However, we perceive there to be a growing number of appeals in dependency cases in which the Department failed to come forward at trial with the evidence necessary to prove the statutory elements as interpreted by case law, and yet the trial court entered an adjudication of dependency based on generalized conclusions unsupported by findings of fact. Thus, we undertake a detailed analysis of the statutory elements applicable in this case in order to explain the failure of proof and to serve as a reminder of the statutory definitions that control in dependency cases.
[3] The statute governing the matters discussed in R.S.M. was former Part IV, "Protective Services for Abused and Neglected Children," of chapter 415, Florida Statutes. The sections constituting Part IV (sections 415.502.514) have since been either repealed or renumbered as sections of chapter 39. Ch. 98-403, Laws of Fla. The definition of "physical injury" in section 415.502(13), Florida Statutes (1993), is identical to the definition of "physical injury" in section 39.01(52), which was created by chapter 98-403.