831 So.2d 1275 (2002)
R.S., the Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D02-147.
District Court of Appeal of Florida, Fourth District.
December 18, 2002.
Kristine M. Johnson of Kristine M. Johnson, P.A., Pembroke Pines, for appellant.
*1276 Richard E. Doran, Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
MAY, J.
The profound nature of the parent-child relationship juxtaposed against society's need to protect children presents difficult decisions for courts. This case illustrates the dilemma. A father appeals an order terminating his rights to his four children.[1] He argues that the record lacks the requisite substantial competent evidence to support the trial court's order. We agree and reverse.
The record reveals that on December 6, 1999, the father awoke and went directly into the bathroom to get ready for work. When he came out, he saw his wife holding D.S., who was crying. As he left for work, his wife told him D.S. wasn't breathing. The father told his wife to call 911. He held the four-month old until the ambulance arrived. The father testified that he had not observed anything wrong with D.S. until his wife advised him that the baby wasn't breathing.
When the family arrived at the hospital, there were no visible signs of injury, trauma, or abuse to D.S. or the other minor children. After reviewing test results, the doctors diagnosed D.S. with two subdural hematomas, a skull fracture, and retinal hemorrhages.
The mother admitted that she had dropped D.S. on his head, and had hit him in the face with her hand. She also admitted that she had squeezed him very tightly. The father denied any knowledge of the mother's actions or that D.S. had been injured in any way.
The Department of Children and Families [DCF] filed a petition for adjudication of dependency regarding the then existing three children. The petition alleged that the mother had committed the abuse and that the father "knowingly failed to protect D.S." Both parents denied the allegations. The mother was subsequently arrested and charged with aggravated child abuse.
After the birth of the fourth child and a failed dependency mediation, the DCF filed a petition to terminate the rights of both parents in February, 2001. The termination petition alleged that the mother had abused D.S. It alleged that the father "knowingly failed to prevent the egregious conduct of the mother" and had subjected D.S. to aggravated child abuse and chronic abuse. The parents again denied the allegations.
The testimony revealed that the father had been the breadwinner in the family. The mother had been the primary caretaker. The father had little interaction with D.S. or his twin sister, De.S., due to their young ages. He had left the care of the children to the mother.
Four medical experts testified. Dr. Shapiro, the pediatric radiologist, testified that D.S. suffered from a chronic hemorrhage around the brain and had experienced an acute episode within hours prior to the hospitalization. Initially, Dr. Greissman, the pediatric intensivist, diagnosed D.S. with "traumatic brain injury, seizure disorder." By the time of trial, he diagnosed D.S. as "neurologically handicapped or mentally retarded, Cerebral Palsy." While he described the injuries as serious and life threatening, he admitted that there were no visible signs of injury to D.S. at the time of his admission to the hospital.
*1277 Dr. Dorfman, the pediatric ophthalmologist, examined the child and opined that there was a 99% likelihood that the child had been shaken. Dr. Wright, a pediatrician and medical director of the Child Protection Team, diagnosed the child with an "abusive head injury, or abusive head trauma which was manifest by subdural inter-cranial [sic] hemorrhages and retinal hemorrhages." The experts agreed that the most recent injury had occurred within hours of the hospital admission.
The trial court entered a final judgment terminating the rights of both parents. The court found that the father "knowingly failed to prevent the egregious conduct of the mother, which threatened the life, safety, physical, mental, or emotional health of the minor child, D.S., and his siblings, C.S., De.S., and S.S., despite having the opportunity and capability to prevent such conduct...." The court further found that the father had "subjected the minor child, D.S., to aggravated child abuse...."
The court's order tracked the statutory grounds for termination. The court specifically found that the mother had been the abuser based upon her own admissions. The court did not find that the father had actually committed the abuse.
The court then concluded that both the mother and father "engaged in egregious conduct toward the minor child," D.S., and that D.S. had been subjected to aggravated child abuse. The court found the siblings to be at substantial risk of physical abuse. Lastly, the court found it to be in the manifest best interest of the children to terminate the parental rights of both the mother and the father. Both parents appealed. This court recently affirmed the order terminating the mother's parental rights. A.S. v. State, No. 4D01-4267, 829 So.2d 227 (Fla. 4th DCA Oct.16, 2002)(per curiam affirmance without opinion).
A natural parent's "fundamental liberty interest in the care, custody, and management of their children" lies at the heart of this appeal. In re Adoption of Baby E.A.W., 658 So.2d 961, 966 (Fla.1995) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982)). The United States Supreme Court has "recognize[d] the sanctity of the biological connection, and we look carefully at anything that would sever the biological parent-child link. To terminate a parent's right in a natural child, the evidence must be clear and convincing." Id. at 967; Santosky, 455 U.S. at 769, 102 S.Ct. 1388. Clear and convincing evidence is
that intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.
In re Davey, 645 So.2d 398, 404 (Fla.1994). In reviewing termination orders, we must affirm unless the order is not supported by substantial competent evidence to support the trial court's finding of "clear and convincing" evidence. E.A.W, 658 So.2d at 967.
Section 39.806, Florida Statutes (2001) provides the grounds for termination of parental rights. The DCF and the trial court relied upon subsections (1)(f) and (g) as the basis for terminating the father's rights. Those sections provide for termination:
(f) When the parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental or emotional health of the child or the child's sibling.

*1278 [or]
(g) When the parent or parents have subjected the child to aggravated child abuse....
§ 39.806(1)(f) and (g), Fla. Stat. (2001).
The question then is whether substantial competent evidence existed to support the trial court's order. Here, there was no evidence that the father had anything to do with the injuries sustained by D.S. In fact, the mother testified to at least three incidents where she inflicted injury on D.S. She was the only one arrested for aggravated child abuse, the only one alleged to have committed the abuse, and the only one against whom proof existed. All of the evidence pointed to the mother as being solely responsible for causing D.S.'s injuries.
Both the petitions for adjudication of dependency and for termination of parental rights restricted their allegations against the father to his failure to protect. Indeed, the DCF still maintains that the father's termination was based on the theory of failure to protect. In order for the father to have failed to protect, there must have been evidence that he had the capability to prevent the abuse. This by necessity requires proof that he knew or should have known of the mother's conduct and resulting injury to D.S. The father denied any knowledge of the mother's conduct and there was no proof to contradict his denial.
The medical evidence established that the injuries were not obvious or visible, but were only identifiable after the doctors examined the CAT scans and the MRI. Dr. Greissman testified that neither the father nor any other layperson would have been able to notice anything wrong. The only outward sign was that D.S. was irritable, which was easily attributable to recent inoculations the baby had received. In short, there was no evidence that the father witnessed the abuse or that he knew or should have known of the child's injuries as they were not visibly discernible. Despite this evidentiary void, the trial court terminated the father's parental rights.
We distinguish this case from the case relied upon by the DCF in which the termination of parental rights was affirmed. See In the Interest of B.J., 737 So.2d 1227 (Fla. 2d DCA 1999). In that case, no one admitted to the abuse. However, the mother had the most recent contact with the child and she admitted her willingness to sacrifice the child. In addition, the mother had a long history with the DCF. This met the requisite standard of proof to support the trial court's termination of her rights.
In its opinion, the Second District stated: "[W]here there is evidence that a child suffered abuse by one or both of the parents present, there is clear and convincing evidence of egregious abuse to support termination of parental rights of both parents." Id. at 1228. Yet, the father's rights were not at issue in that appeal.
While the Second District acknowledged the trial court's ability to terminate the rights of both parents, it is important to clearly understand what the court did not say. Significantly, the court did not mandate a termination of both parents' rights where both may have been present at the time of the abuse. Rather, the court indicated that clear and convincing evidence of egregious abuse can be found where there is evidence that both parents were present when the abuse occurred.
Indeed, in an earlier opinion, the Second District acknowledged the options available to a trial court in termination proceedings. In the Interest of A.C., 660 So.2d 330 (Fla. 2d DCA 1995). Chapter 39 provides the trial court with the option of terminating one or both parents' rights based upon the conduct of one parent. It also allows the court to terminate only one *1279 parent's rights where there is an "absolute dearth of testimony to indicate the father was in a position to be aware of [the child's] injuries." Id. at 331. Thus, chapter 39 does not prevent the court from terminating only one parent's rights. See also In the Interest of K.C.C., 750 So.2d 38 (Fla. 2d DCA 1999).
Termination of parental rights cases involve some of the most difficult and delicate decisions facing trial judges. All Florida citizens want children protected from abuse. They also want children to have permanency, which should be determined as promptly as possible.
The legislature has provided the mechanism to achieve that result. That is the mission of chapter 39. But, chapter 39 has built in safeguards to insure that in the process of protecting children, the parent's rights are given due consideration. That protection comes in the form of the evidentiary standards to be met before the termination of a parent's rights can take place. It requires "substantial competent evidence" to support the trial court's finding of "clear and convincing" evidence. In re Adoption of Baby E.A.W., 658 So.2d at 967. In the absence of any proof, much less that necessary to meet those exacting standards, a trial court's order must be reversed.
We find this record to be devoid of the requisite evidence necessary to terminate the parental rights of the father. The evidence in this case as regards to the father is neither substantial nor competent. It simply doesn't exist. For this reason, we reverse the order terminating the rights of the father to these children.
POLEN, C.J., and GUNTHER J., concur.
NOTES
[1] When these proceedings began, the parents had three children, C.S., De.S., and D.S. Within the year, the parents had another child, S.S.