937 So.2d 1257 (2006)
In the Interest of C.R., a child.
G.R., Appellant,
v.
Department of Children and Family Services, Appellee.
In the Interest of J.A., J.A., and C.R., children.
G.R., Appellant,
v.
Department of Children and Family Services, Appellee.
Nos. 2D05-1192, 2D05-1323.
District Court of Appeal of Florida, Second District.
September 29, 2006.
*1258 Norman A. Palumbo, Jr., Tampa, for Appellant G.R., the Father.
James F. Cummins, Tampa, for Appellant, G.R., the Mother.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Christopher Perone, Assistant Attorney General, Tampa, for Appellee.
*1259 FULMER, Chief Judge.
In case number 2D05-1192, the Father, G.R., appeals an adjudication of dependency as to his daughter, C.R. In case number 2D05-1323, the Mother, whose initials are also G.R., appeals an adjudication of dependency as to C.R. and her two sons, J.A. and J.A., by her former husband, who is not a party. For clarity, the older and younger sons will be designated Je.A. and Jo.A., respectively. Because we conclude that the evidence was legally insufficient to support the adjudications, we reverse the trial court's Corrected Order of Dependency Adjudication and Disposition as to both the Father and the Mother.

Facts and Procedural History
According to the Father's testimony, he and the Mother had been married since September or October 2003. The Father, the Mother, and the Mother's two sons, Je.A. and Jo.A., were residing together in late February 2004, when the events giving rise to this dependency action took place. One evening the younger son, Jo. A., who was three years old at the time, was put in his bedroom for crying. After a few minutes, the Mother asked the Father to check on Jo.A. The Father testified that he noticed that Jo.A. had wet his pants, so he lifted the child up off the bed, swung him around, and pointed him to the door, to get him to go into the bathroom and change clothes. As he was placing or about to place Jo.A. on the floor, the Father said he heard a loud pop. He knew something was wrong, so he took Jo.A. out to the other room where the Mother was. The Mother did not witness what happened in the bedroom. The Father and Mother immediately drove Jo.A. to a Plant City hospital where the emergency room staff determined Jo.A. suffered a spiral fracture to his left femur. The nature of the injury required Jo.A. to be transferred to St. Joseph's Hospital in Tampa for treatment. There, he was seen by a pediatric orthopedic surgeon, put in a cast, and released.
At the Plant City hospital, the Father and Mother were interviewed by a Department of Children and Family Services child protective investigator (CPI). A sheriff's deputy also talked to the Father, who declined to speak post-Miranda, and the Mother. The Father testified that he was later charged with aggravated child abuse but the charge was dropped. Jo.A. and Je.A. were sheltered as a result of the incident. C.R., who was born several months after the incident, was also sheltered shortly after birth.
The Department filed a First Amended Petition for Adjudication of Dependency alleging that the Father abused and used inappropriate or excessively harsh discipline against his stepson Jo.A., that the Mother negligently failed to protect Jo.A., that the Mother knew of the Father's violent tendencies but "chose to ignore the potential hazards to the children," and that the children were in danger of threatened harm from the Father. At the adjudicatory hearing, testimony was elicited from the Father and the Mother, the intake nurse at the first hospital, the sheriff's deputy, the treating physician at St. Joseph's hospital, a successor CPI not directly involved in the investigation of the case, the Father's former probation officer,[1] and a nurse with the Child Protection Team (CPT). Also received into evidence was a deposition taken of the regional medical director of the CPT. Following the hearing, the three children were adjudicated dependentC.R. as to the Father and *1260 Mother, and Jo.A. and Je.A. as to the Mother only.[2]
In its Corrected Order of Dependency, the trial court found that the Father "used excessive and inappropriate punishment on [Jo.A.]" and that the Mother "failed to protect [Jo.A.] from excessive and inappropriate punishment or abuse by her husband."[3] With respect to the threatened-harm allegation, the court found, as to the Mother, that "[d]ue to the failure to protect and the failure to cooperate with the Department, the other children are at risk for prospective abuse or harm." As to the Father, the court found that "[d]ue to the severity of the injury to the child and the failure to cooperate with the Department, the other children are at risk for prospective abuse or harm."

Discussion
The Department is required to establish a child's state of dependency by a preponderance of the evidence. § 39.507(1)(b), Fla. Stat. (2003); Fla. R. Juv. P. 8.330(a). "A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record." In re M.F., 770 So.2d 1189, 1192 (Fla.2000).
We conclude that the trial court properly found that the Father abused Jo.A. in the incident in which Jo.A.'s femur was broken. Key testimony was provided in a deposition by the CPT's regional medical director, who opined that none of the explanations of the incident provided by the Father could explain an injury as severe as a spiral fracture to the child's femur.
However, we must also conclude from our review of the record that the evidence presented by the Department was not legally sufficient to support the trial court's finding that the Mother failed to protect Jo.A. or the other children from the Father's abuse. A "[c]hild who is found to be dependent" is one found by the court "[t]o have been abandoned, abused, or neglected by the child's parent or parents or legal custodians[.]" § 39.01(14)(a). "`Abuse' means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions." § 39.01(2). In turn, "`[h]arm' to a child's health or welfare can occur when any person ... [n]egligently fails to protect a child in his or her care from inflicted physical, mental, or sexual injury caused by the acts of another." § 39.01(30)(j) (emphasis added).
Although somewhat mixed, the case law addressing failure-to-protect findings in the dependency context indicates that the Department must demonstrate that the parent who allegedly failed to protect the child knew or should have known that the abusive person was engaging in the abuse.[4] In In re J.A.H., 876 So.2d 647, *1261 648 (Fla. 2d DCA 2004), for example, we concluded that the trial court's adjudication of dependency was proper when "competent, substantial evidence was presented that the mother knew of the grandfather's propensity to abuse the child but nonetheless permitted them to be together without direct and continuous supervision" (emphasis added). In A.B. v. Florida Department of Children & Family Services, 901 So.2d 324 (Fla. 3d DCA 2005), the court affirmed a finding of dependency as to the mother for failing to protect her teenage daughter from the stepfather's sexual abuse when the daughter had informed the mother of the situation and the mother's response was to suggest prayer, fasting, and locking the bedroom door. In A.R. v. Department of Children & Families, 784 So.2d 622 (Fla. 5th DCA 2001), in which two children were adjudicated dependent as to their mother after the mother's youngest child died of shaken baby syndrome at the hands of the child's father while the mother was at work, the court reversed, stating:
The Department concedes that no evidence was presented that [the mother] knew or should have known that [the father] constituted a danger to [the baby] and that [the mother] failed to protect [the baby]. The Department was relegated to showing that [the other two children] were at substantial risk of imminent abuse, abandonment or neglect by the mother.
Id. at 623.
Even in the absence of direct proof that a parent knew of the abuse of a child, courts have affirmed findings that the abuse could not possibly have occurred without the parent's knowledge. For example, in S.P. v. Department of Children & Families, 866 So.2d 1253 (Fla. 5th DCA 2004), one of the mother's two children suffered numerous injuries caused by a sharp instrument. The mother claimed that, after hearing screams from this child, she found the other child, who was only four years old, holding a coat hanger. Expert testimony disclosed that the latter child could not have caused the injuries. Notwithstanding the mother's argument that there was no evidence that it was she who caused the injuries, the appellate court concluded that the trial court's finding that "the abuse could not have occurred without the mother's knowledge" was supported by the evidence. Id. at 1254-55.
Also instructive is R.S. v. Department of Children & Families, 831 So.2d 1275 (Fla. 4th DCA 2002), a termination of parental rights case in which the court wrote:
In order for the father to have failed to protect, there must have been evidence that he had the capability to prevent the abuse. This by necessity requires proof that he knew or should have known of the mother's conduct [dropping their four-month-old child on his head and hitting him on the face with her hand] and resulting injury to [the child].
Id. at 1278. This statement is based on section 39.806(1)(f), which lists as a ground for termination the situation in which a parent "had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child . . . ." "Egregious conduct" includes abuse, abandonment, and *1262 neglect. § 39.806(1)(f)(2). Although the definition of failure to protect applicable to dependency proceedings is worded differently, see § 39.01(30)(j), we believe that it is logical in the dependency context as well to require proof that the parent who is alleged to have failed to protect the child knew or should have known that the offender would engage in the abusive conduct.
Our review of the trial court's finding that the Mother failed to protect Jo.A. is made difficult by the lack of evidence that could provide a context to the incident. The Department presented evidence of only one incident of abuse, albeit a serious incident. There was no testimony concerning any abuse of the older son, Je.A., or of any signs of other abuse on the body of Jo.A., such as bruising or old fractures that had healed. The Department presented no testimony from anyone who might have observed the family's mode of living, the parents' disciplinary practices, and so forth. In short, there was no evidence that the Mother knew or should have known whether the Father had a propensity toward abuse. As such, we believe that the trial court lacked a basis for finding that the Mother failed to protect Jo.A. from the Father.
The Department's appellate brief addresses the failure-to-protect issue in cursory fashion, citing no case law on this issue and focusing on supposed inconsistencies in the Mother's statements regarding the cause of Jo.A.'s injury, thus calling into question the Mother's credibility. The trial court's Corrected Order of Dependency also states that the Mother's statements were inconsistent, but does not specify how. Moreover, neither the court nor the Department explains how such inconsistencies would necessarily compel the finding that the Mother failed to protect Jo.A. The Mother and Father consistently stated that the Mother was not in the bedroom when the incident with Jo.A. occurred; she knew what she knew only from what the Father reported to her. The treating physician at St. Joseph's Hospital testified that the Mother's story was that the Father "moved the child from the bed to the floor." The physician acknowledged that he was not given any more detail from the Mother on the child's movement. The Father's probation officer testified that the Mother's version of the incident was that the Father "laid [Jo.A.] down gently by the hip area and then there was a pop sound." These stories are not inconsistent; rather, they complement each other. We conclude that the evidence presented was legally insufficient to support the trial court's finding that the Mother failed to protect Jo.A.
As for the trial court's findings that the children would be at risk of prospective abuse or harm from the Father and the Mother, the relevant statutory provision is that a "[c]hild who is found to be dependent" includes one who is found by the court "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." § 39.01(14)(f) (emphasis added). Dependency can be found in the context of prospective abuse based on proof of abuse of other children, Denson v. Dep't of Health & Rehabilitative Servs., 661 So.2d 934, 935 (Fla. 5th DCA 1995), in particular siblings, In re C.M., 844 So.2d 765, 766 (Fla. 2d DCA 2003). However,
the evidence must demonstrate a nexus between the abuse and any prospective abuse to another sibling. O.S. v. Dep't of Children & Families, 821 So.2d 1145 (Fla. 4th DCA 2002); D.H. v. Dep't of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000). Generally, this nexus is established when the parent has a mental or emotional condition that will *1263 continue, such as mental illness, drug addiction, or pedophilia, and which will make it highly probable that in the future the parent will abuse or neglect another child. D.H., 769 So.2d at 427. See Gaines v. Dep't of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998) (stating that to establish nexus the Department must produce evidence that the parent's behavior was beyond his control, was likely to continue, and placed the children at risk).
C.M., 844 So.2d at 766; see also M.F., 770 So.2d at 1194 ("A simple showing by [the Department] that a parent committed a sex act on one child does not by itself constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling, as required by the statute."). In short, the mere fact that a parent has abused one child does not, alone, constitute sufficient evidence for a finding of dependency as to another child with respect to that parent.
In D.H. v. Department of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000), the appellant had a daughter with his girlfriend and also took care of the girlfriend's other child. On one occasion the appellant kicked the girlfriend's child in the head. The trial court found that this incident constituted abuse and that the appellant's daughter was dependent as to the appellant based on a prospective-abuse theory. Id. at 425-26. On appeal, however, the Fourth District concluded that no nexus was proven between the act of abuse to the girlfriend's child and any prospective abuse to the appellant's daughter, and reversed the adjudication of dependency. The court based its conclusion on the fact that there was only a single incident of abuse and on the lack of testimony that the appellant had a mental or emotional condition indicating a probability that he would be abusive toward his own daughter. Id. at 427-28.
Here, the situation surrounding the Father and C.R. is similar.[5] The trial court properly found that the Father abused Jo.A. on the one occasion. However, there was no evidence of the nexus factors listed in Gaines v. Department of Children & Families, 711 So.2d 190, 193 (Fla. 5th DCA 1998): that the behavior of the Father was beyond his control, that the behavior was likely to continue, and that the single incident of abuse to Jo.A. placed C.R. at risk. The Department presented no evidence on any psychological condition that the Father might have that would indicate a likelihood of ongoing abuse. Indeed, as noted previously, there was no evidence of any other incidents of abuse to any of the children.
Because the Department failed to establish a nexus between the Father's abuse of Jo.A. and prospective abuse by the Father against C.R. and to adduce evidence of the Mother's failure to protect Jo.A., it follows that any prospective-abuse theory as to the Mother and the children must fail. We therefore reverse the trial court's Corrected Order of Dependency Adjudication and Disposition as to the Father and C.R., and as to the Mother and Je.A., Jo.A., and C.R.
Reversed and remanded.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] Over objection, the probation officer testified that the offense underlying the Father's probation was driving while license suspended.
[2] Jo.A. and Je.A. could not be found dependent as to the Father because of the way in which dependency is defined in the statute. See § 39.01(14)(a), (f), Fla. Stat. (2003) (defining dependency in terms of abuse, imminent abuse, etc., by a child's parents or legal custodians) and § 39.01(33), (49) (defining "legal custody" and "parent"). Here, the Father was neither the parent nor the legal custodian of his two stepsons.
[3] The trial court made no specific finding on the allegation that the Mother knew of the Father's violent tendencies but chose to ignore the potential hazards to the children.
[4] Such a knowledge requirement is consistent with the general principles of negligence in the tort context. See, e.g., Springer v. Morris, 74 So.2d 781, 785 (Fla.1954) ("The prime foundation of liability in negligence cases is knowledgeor what is deemed to be in law the same thing, opportunity by the exercise of reasonable diligence to acquire knowledge of the peril which subsequently results in injury. Fault on the part of the defendant is to be found in his action or nonaction accompanied by knowledge, actual or implied, of the probable results of his conduct contemporaneous with the infliction of injury[.]" (citation and internal quotation marks omitted)).
[5] Because the only child found dependent as to the Father was C.R., we need not discuss the prospective-abuse theory as it might apply to the relationship between the Father and his stepsons Je.A. and Jo.A.