STRINGER, Judge.
S.G., the Mother, seeks review of the trial court’s order adjudicating her five children dependent. The Mother argues that the trial court erred in concluding that she had neglected the children by allowing a man who was two months out of prison to spend nights in her home and have a relationship with her children. We agree that these acts did not' constitute neglect as a matter of law and reverse.
The facts of this case are tragic. In February 2006, the Mother discovered that her boyfriend of two months, who had been spending nights in her home, had a criminal background and had recently been released from prison. The Mother attempted to end her relationship with the boyfriend, but the conversation escalated into a heated argument during which the boyfriend threatened that she would “pay for this.” The Mother ordered the boyfriend to leave her apartment and, with the assistance of two friends, eventually pushed him out the door.
At the time of these events, the children were at school. The Mother then went to a neighbor’s home, where she intended to contact the police but never did. One of the Mother’s friends went to the bus stop to retrieve the children. The friend then took the children to the Mother’s apartment. Within thirty minutes of his departure, the boyfriend returned with a gun and banged on the back door to the Mother’s apartment while threatening to “kill her and shoot up the place.” The friend inside the apartment attempted to shelter the children in the closet, but two children remained in an interior room. The boyfriend then ran to the front of the apartment and repeated his threats. When no *652 one answered, he fired shots - into the Mother’s apartment. The Mother’s twelve-year-old son, who had not found shelter in the closet, was struck in the head with one of the bullets. He suffered serious injuries but did not die from the gunshot.
The Department of Children and Families (“the Department”) removed the children from the home and filed a petition seeking an adjudication of dependency. The trial court struggled with its determination, noting that “to some extent, the [M]other had no control over the unfortunate events that transpired.” The court remarked that the Department “barely tipped the scales in favor of a dependency,” but ultimately concluded that the Mother placed the children at substantial risk of imminent harm by allowing a man who had been out of prison for only two months to have a relationship with her children and spend nights in her apartment. The court reasoned that these actions “caused the children’s physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired.” The court thus determined that the Mother neglected the children and adjudicated them dependent on this basis.
“A court’s final ruling of dependency is a mixed question of law and fact and will be -.sustained on review if the court applied the correct law and its ruling is supported by competent substantial evi-. dence in the record.” R.F. v. Fla. Dep’t of Children & Families (In re M.F.), 770 So.2d 1189, 1192 (Fla.2000). A trial court may adjudicate a child dependent if the State proves by a preponderance of the evidence that the child was “abandoned, abused, or neglected by the child’s parent” or that the child is “at substantial risk of imminent abuse, abandonment, or neglect by the parent.” §§ 39.01(14)(a), (f); 39.507(l)(b), Fla. Stat. (2005). “ ‘Neglect’ occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.” § 39.01(45).
In this case, the court concluded that the Mother’s act of engaging in a relationship with a man who had been out of prison for only two months and allowing him to spend nights in her apartment “caused the children’s physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired.” However, the Mother’s decision to have a relationship with a felon did not cause the harm to the children in this case. The harm to the children was caused by the felon’s heat-of-passion crime of shooting into the Mother’s apartment after she ended their relationship. The Mother had no forewarning of this behavior, and it certainly cannot be said that the mere fact that the Mother’s boyfriend was a felon should have given the Mother warning.
The Department argues that the Mother should have known the boyfriend would shoot into the apartment because the boyfriend told her she was going to pay for kicking him out. However, the boyfriend’s threat was not specific, and there was no evidence that he had previously wielded a weapon or acted violently toward her. The Mother simply had no reason to think the boyfriend would retrieve a gun and shoot into her. apartment. As the trial court itself recognized, “the [Mjother had no control over the unfortunate events that transpired.”
We understand the trial court’s concern with the Mother’s decision-making ability *653 when it comes to choosing a paramour. However, this is not a case in which the boyfriend became increasingly violent and the Mother put the children at risk by maintaining a relationship with the boyfriend. Indeed, the Mother ended the relationship because she found out that the boyfriend was a felon.
For these reasons, the trial court erred in concluding that the Mother neglected the children. We therefore reverse the adjudication of dependency.
Reversed.
DAVIS and WALLACE, JJ., Concur.