ALTENBERND, Judge.
H.B., the mother of an infant child, J.E.B., appeals an order adjudicating the child dependent based upon a finding that the child was at imminent risk of prospective abuse. The Department of Children and Family Services (the Department) sheltered J.E.B. at birth because H.B. was facing a pending criminal charge of neglect regarding another child of H.B. who died under unexplained circumstances two years earlier. We reverse the adjudication of dependency because the Department offered no proof at the adjudicatory hearing other than the mother’s arrest and pending criminal charge to support its petition for dependency. We emphasize that although the burden of proof in a dependency case is significantly less than that required to support a termination of parental rights, the Department must present a quantum of competent, substantial evidence supporting its assertion that a child it alleges to be dependent is at risk of imminent harm from the parent.
J.E.B. was born in. July 2006. In August, the Department sheltered the child and placed the child with the maternal grandmother. Thereafter, the Department filed a petition for dependency against H.B. and L.B., the father of J.E.B. The petition alleged that J.E.B. was at imminent risk of abuse or neglect from both parents. An adjudicatory hearing was held on the petition in March 2007.
At the adjudicatory hearing, the Department presented the testimony of only four witnesses: H.B., L.B., and two representatives from the Department. H.B. indicated that she would invoke her Fifth Amendment privilege on questions related to the pending criminal charge, and thus counsel for the Department asked only limited questions of her.[1] L.B. testified briefly. The two Department representatives provided limited testimony because they had no personal knowledge of the events and circumstances alleged in the dependency petition. They had decided to shelter J.E.B. based on a review of certain records that were never introduced into evidence.
Accordingly, the Department’s evidence established only the following. In 2004, *189 H.B. was the mother of two young children, S.P. and T.P. She and the children lived with L.B. and one of his children from a prior relationship. In June 2004, S.P. received a head injury that caused his death. L.B. testified that he was not home at the time of the injury, and he did not believe H.B. abused or neglected the child. However, H.B. was arrested and charged with child neglect in connection with the child’s death.[2] According to the Department representatives, they reviewed the reports from this incident and decided that H.B. and L.B. posed a substantial risk of imminent harm to the newborn J.E.B. The Department thus immediately sheltered the child and filed a petition for dependency against both parents.
At the conclusion of the evidence, the circuit court denied the petition for dependency as it related to the father, L.B., because the Department had presented no evidence to support the allegations against him. The court expressed concern that the only evidence the Department had presented with respect to H.B. was the fact that she had been arrested and charged with neglect in connection with the death of S.P. After hearing argument on the matter, however, the court was persuaded to adjudicate J.E.B. dependent as to H.B.[3]
A trial court may adjudicate a child dependent if the Department proves by a preponderance of the evidence that the child is “at substantial risk of imminent abuse, abandonment, or neglect by the parent.” §§ 39.01(14)®, .507(1)(b), Fla. Stat. (2006); see also S.G. v. Dep’t of Children & Family Servs. (In re I.B.), 946 So.2d 650, 652 (Fla. 2d DCA 2007). Here, the only allegation made by the Department against H.B. was that her neglect of another child, S.P., established that J.E.B. was at substantial risk of imminent abuse or neglect. Children who have not been abused may be deemed to be at substantial risk of imminent abuse or neglect based on a parent’s abuse or neglect of their siblings; however, the evidence must demonstrate a nexus between the past abuse and any prospective abuse to another sibling. C.M. v. Dep’t of Children & Family Servs. (In re C.M.), 844 So.2d 765, 766 (Fla. 2d DCA 2003).
The initial problem here, of course, is that the Department did not prove that H.B. abused or neglected her deceased child, S.P. The Department proved only that H.B. had been arrested and accused of neglecting S.P. Generally speaking, the law does not recognize an arrest alone, without subsequent conviction, as probative evidence of wrongdoing. See, e.g., David v. City of Jacksonville, 534 So.2d 784, 787 (Fla. 1st DCA 1988) (“‘Arrest, without more, does not, in law any more than in reason, impeach the integrity of a witness.’ Harmon v. State, 394 So.2d 121, 125 (Fla. 1st DCA 1980).”); Hines v. State, 358 So.2d 183, 185 (Fla.1978) (“The Florida Statutes do not authorize, nor would our constitution permit, a permanent revocation of probation based solely upon proof of an arrest during the probationary period.”).
The Department was required to establish more than probable cause that H.B. *190 had abused or neglected a child; it was required to establish by a preponderance of the evidence that H.B. had abused or neglected S.P. and that J.E.B. was now at substantial risk of imminent abuse or neglect. Thus, the Department was required to produce evidence apart from the arrest itself that H.B. had abused or neglected S.P. We note that this burden is not insurmountable. Presumably, if the State was prepared to prove the criminal offense against H.B. beyond a reasonable doubt, the Department should have had the necessary evidence to substantiate its allegations in the dependency case.
Without any evidence that H.B. abused or neglected S.P. or that she posed any individual threat to J.E.B., the adjudication of dependency cannot stand. We therefore reverse and remand for further proceedings. On remand, if the Department can provide sufficient proof regarding J.E.B.’s dependency as to H.B., it should be permitted to do so.
Reversed and remanded for further proceedings.
VILLANTI, J., and GREEN, OLIVER L., Senior Judge, Concur.

. Counsel for the Department did not pursue questioning H.B. once H.B. indicated that she would invoke her Fifth Amendment privilege. Thus we need not address whether the invocation of the privilege as to specific questions may be treated as an inference that H.B.'s responses would have incriminated her. See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]”). We note that counsel for the guardian ad litem briefly suggested that the adjudicatory hearing be continued until the criminal charge was tried and indicated that the criminal trial was scheduled for the near future. That suggestion was disregarded, however, and no party pursued that issue further. Such a continuance might have been advisable in this case. See, e.g., C.J. v. Dep’t of Children & Families, 756 So.2d 1108, 1110 n. 1 (Fla. 3d DCA 2000).

. Although the Department did not present evidence at the adjudicatory hearing regarding the details of the charge of neglect, other documents in this record suggest that the charges against H.B. are not based upon an allegation that she inflicted the injury on the child, but instead on an allegation that she did not seek timely medical attention for the injury.

. This result effectively placed the infant in the legal custody of the father, L.B., requiring the separation of the parents while the dependency continued as to H.B. The record suggests that L.B. chose to leave the child in the home of the maternal grandmother.