# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D24-105
Lower Tribunal No. 2023-DP-73
_____

In the Interest of J.F. and P.K, children,

J.F.,

Appellant,

v.

DEPARTMENT OF CHILDREN AND FAMILIES and STATEWIDE GUARDIAN AD LITEM,

Appellees.

_____

Appeal from the Circuit Court for Osceola County.
Laura Shaffer, Judge.

May 8, 2024

GANNAM, J.

In this dependency case, the father of children J.F. and P.K. appeals the trial court's supplemental order finding the father contributed to the children's previously adjudicated dependency status under the Florida Juvenile Justice Act, chapter 39, Florida Statutes. Because the trial court did not apply the correct legal standard, and the record evidence is not legally sufficient to support a finding that the father engaged in conduct placing J.F. and P.K. at substantial risk of imminent abuse, we

reverse the supplemental order and remand for placement and other appropriate proceedings under chapter 39.

I.

J.F. and P.K., ages eight and five, were removed from the home they shared with their mother and her boyfriend pursuant to a shelter order.[1] Their father—the appellant—lives separately with his girlfriend and several other children they share in common. Following the removal of J.F. and P.K. from their mother's house, the Department of Children and Families (DCF) filed a dependency petition alleging numerous grounds of neglect and other harms by the mother, and as to the father alleging he cannot take custody of J.F. and P.K. because his girlfriend "has disqualifying abuse history, and she would be the main caregiver for the children while he works." There is no allegation that the father or his girlfriend ever abused, abandoned, or neglected J.F. or P.K.

At the arraignment on the dependency petition, the father and mother each denied the respective allegations against them, and the trial court set an adjudicatory hearing. Before the hearing, however, the mother consented to adjudication of dependency, resulting in an order adjudicating J.F. and P.K. dependent and placing them in foster care. DCF moved for supplemental findings that the father contributed

---

[1] A third child of the mother, N.C., was also removed and adjudicated dependent, but is not related to the appellant father or this appeal.

2

to the dependency status of J.F. and P.K., and the trial court held a supplemental adjudicatory hearing as to the father.

At the conclusion of the supplemental hearing, the trial court announced its findings on the record and subsequently memorialized the findings in a written, supplemental order:

> The father cannot take custody of the children. The other parent home assessment is denied. The father does not have appropriate housing to take custody of the children. The father lives in a home where the other household member has disqualifying criminal history that would prevent her from being a primary caregiver for the children. The court's main concern was the testimony of the father and romantic partner. Both the father and romantic partner believe it is acceptable to physically discipline a 4-year-old child for wetting himself. The romantic partner who lives in the home admitted to hitting a child with a belt. There was testimony that the father previously hit a child hard enough to cause a bruise. The court did not hear any remorse or acknowledgment that this was wrong. The father was given an opportunity to work on a shift change, but he has not asked or looked into it before the evidentiary hearing. The children would be at risk of abuse in the father's home. [DCF] prevailed by the preponderance of the evidence.

The father timely appealed the supplemental order, and we have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A), 9.146(a).

3

## II.

### A.

It was DCF's burden below to prove the dependency petition allegations against the father by a preponderance of the evidence. Fla. R. Juv. P. 8.330(a). The trial court's adjudication of dependency "is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record," which "is tantamount to legally sufficient evidence." *In re M.F.*, 770 So. 2d 1189, 1192 (Fla. 2000). We give deference to the trial court's resolution of conflicting evidence, *see L.M. v. Dep't of Child. & Fams.*, 336 So. 3d 1291, 1291 (Fla. 5th DCA 2022), but we review de novo the trial court's application of the law to the facts. *See D.R. v. J.R.*, 203 So. 3d 952, 954 (Fla. 5th DCA 2016).

### B.

A trial court may adjudicate a child dependent based on the conduct of one parent, *see* § 39.507(7)(a), Fla. Stat. (2023); Fla. R. Juv. P. 8.315(a), but must also determine whether, at the time the child was adjudicated dependent, the other parent had "abused, abandoned, or neglected the child or engaged in conduct that placed the child at substantial risk of imminent abuse, abandonment, or neglect."

4

§ 39.507(7)(b), Fla. Stat.[2] The adjudication of J.F. and P.K. as dependent, based on their mother's consent, is not challenged or otherwise at issue in this appeal. Rather, their father challenges the trial court's supplemental order, entered pursuant to section 39.507(7)(b), determining that the father contributed to the children's dependency status based on the ultimate finding that "[t]he children would be at risk of abuse in the father's home."

The trial court's finding of "risk of abuse," as a matter of law, is not legally sufficient to support an adjudication of dependency as to the father because "risk of abuse" is not the standard set forth in chapter 39. Rather, in order to determine that the father contributed to the children's dependency under chapter 39, the trial court was required to find either that the father had "abused, abandoned, or neglected" J.F. and P.K. or that the father "engaged in conduct that placed the child[ren] at substantial risk of imminent abuse, abandonment, or neglect." *See* § 39.507(7)(b), Fla. Stat. "Risk of abuse," as found by the trial court, is not equivalent to *substantial*

---

[2] Section 39.507(7)(b) is concerned with only two of the seven alternative categories composing the statutory definition of a dependent child. *Compare* § 39.507(7)(b), Fla. Stat. (requiring determination of whether other parent "abused, abandoned, or neglected the child or engaged in conduct that placed the child at substantial risk of imminent abuse, abandonment, or neglect"), *with* § 39.01(14), Fla. Stat. (defining dependent child as, *inter alia*, "(a) . . . abandoned, abused, or neglected by the child's parent" or "(f) . . . at substantial risk of imminent abuse, abandonment, or neglect by the parent").

risk of *imminent* abuse, and therefore, as a matter of law, does not support the trial court's adjudication of dependency as to the father.

C.

Applying the correct legal standard—whether the father "engaged in conduct that placed [J.F. and P.K.] at substantial risk of imminent abuse" under section 39.507(7)(b)—there also was not sufficient evidence in the record for the trial court to have adjudicated the children dependent as to the father. The supplemental order makes several subsidiary factual findings which have evidentiary support, but which are not legally sufficient to support the adjudication. The subsidiary findings concern the father's conduct in two categories: (1) the father's living with a girlfriend who, over fourteen years ago, was charged by police and investigated by DCF for an incident of alleged abuse of a child she and the father have in common, and (2) the father's corporal punishment of the same child, in an even earlier incident, resulting in a bruise on the child's face. Following is a review of the record evidence supporting these findings.

1.

In 2009, the father's girlfriend was arrested and criminally charged by police, and investigated by DCF, for an incident of alleged abuse of one of the four children

6

she has in common with the father.[3] The child was four or five years old at the time. The state attorney dropped the case, however, and there is no evidence that DCF imposed its supervision or any services in connection with the alleged abuse. Fourteen years later, when DCF petitioned the trial court to remove J.F. and P.K. from their mother's house and place them in emergency shelter, DCF initiated an "Other Parent Home Assessment" (OPHA)[4] to determine whether DCF could recommend placement of the children with their father and his girlfriend. DCF did not complete the OPHA, but instead recommended against placement based on its conclusion that the girlfriend's alleged abuse of her child in 2009 was disqualifying. This conclusion was also the basis for DCF's only allegation against the father in the original dependency petition for J.F. and P.K., which was that "[t]he father cannot take custody of the children" because "his romantic partner has disqualifying abuse history, and she would be the main caregiver for the children while he works."

At the supplemental hearing, DCF offered no evidence of the alleged abuse by the girlfriend apart from the incomplete OPHA document, which merely noted

---

[3] The four children the father and his girlfriend have in common range in age from one to eighteen years.

[4] *See* Fla. Admin. Code R. 65C-30.001(77) ("'Other Parent Home Assessment' means the assessment of a parent and the parent's household prior to the child's release or placement, in order to determine if the parent will be able to safely care for the child."); Fla. Admin. Code R. 65C-28.012(1) ("Prior to release or placement of a child with another parent, an 'Other Parent Home Assessment,' CF-FSP 5411, October 2013, incorporated by reference and available at http://www.flrules.org/Gateway/reference.asp?No=Ref-06741, must be completed.")

7

the 2009 "verified [DCF] case for physical injury" and criminal charge "show[ing] no information filed–case closed." No DCF witness testified to the nature or severity of the alleged abuse or "verified case" noted in the OPHA. The girlfriend testified, however, that the abuse allegation arose from a bruise on the child's face that he had received at school in an accidental collision with a teacher. She testified that she did not bruise the child, but she did inform investigators at the time that she had hit the child with a belt, on his hand, for wetting himself. DCF's sole witness testified that the girlfriend "is the main issue with the [OPHA]."

2.

During the father's testimony at the supplemental hearing, he admitted to corporal discipline of the same child for wetting himself, though only after repeated verbal admonitions. The father also did not dispute his girlfriend's testimony that, when the child was three years old, the father hit the child's face, leaving a bruise. Regarding his work schedule, he testified that he is willing to change from the night shift to the day shift which would allow him to be home with his children after school instead of leaving them with his girlfriend while he works, but that he has not yet asked his employer for the change and does not know whether his employer would approve it.

D.

The record evidence supports the trial court's subsidiary findings that the girlfriend hit her four-year-old with a belt (in 2009), and that the father hit the same child on the face, leaving a bruise (a year earlier). These incidents, however, on this record, do not constitute "abuse" as defined in chapter 39, and do not otherwise support a finding of substantial risk of imminent abuse.

"Abuse" is defined in chapter 39 to exclude corporal discipline that is not harmful:

> "Abuse" means any willful act or threatened act that results in any physical, mental, or sexual abuse, injury, or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. . . . *Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.*

§ 39.01(2), Fla. Stat. (emphasis added). "'Harm' . . . can occur," according to the statute, by any person's infliction of "physical, mental, or emotional injury," which "includes, but is not limited to:"

> . . . .

> Inappropriate or excessively harsh disciplinary action that is likely to result in physical injury, mental injury . . . or emotional injury. The significance of any injury must be evaluated in light of the following factors: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted. *Corporal*

9

> *discipline may be considered excessive or abusive when it*
> *results in any of the following or other similar injuries:*
>
> . . . .
>
> *Significant bruises* or welts.

§ 39.01(34)(a)4, Fla. Stat. (emphasis added).

Under these statutory definitions, corporal discipline must "result in harm" to be abuse, which generally means it must result in injury or significant impairment of physical, mental, or emotional health. And bruising from corporal discipline must be "significant" to be deemed an abusive injury. Thus, our sister district courts have held hitting with a belt and hitting on the face, even if bruising, are not abusive corporal discipline without evidence of injury or significant health impairment. *See, e.g.*, *L.M. v. Dep't of Child. & Fams.*, 336 So. 3d 1291, 1292 (Fla. 5th DCA 2022) (collecting cases); *T.G. v. Dep't of Child. & Fams.*, 927 So. 2d 104, 106 (Fla. 1st DCA 2006) (holding single incident of corporal discipline causing bruise was insufficient to establish abuse where no evidence bruise required medical attention or was otherwise significant); *J.C. v. Dep't of Child. & Fams.*, 773 So. 2d 1220, 1221–22 (Fla. 4th DCA 2000) (holding father's routine spanking of oldest child with belt, causing bruise to child's buttocks on one occasion, was insufficient to establish abuse where no evidence bruise was significant or constituted temporary disfigurement); *In re W.P.*, 534 So. 2d 905, 905 (Fla. 2d DCA 1988) (holding father's slapping child on face, leaving mark, and mother's pulling the child's hair

10

were insufficient to establish abuse where child required no medical attention and no evidence that slap or hair pulling significantly impaired child's health).

Here, the record evidence supports the trial court's findings that the girlfriend, in 2009, hit her four-year-old son with a belt, on the hand, and that the father bruised the same child's face when the child was three years old. But DCF did not prove the severity of the bruise or any other injury to the child, and did not otherwise prove harm to the child from either incident of corporal discipline. Nor did DCF prove any abusive conduct by the father or girlfriend since. Thus, there is not competent substantial evidence to support a finding that the father or his girlfriend ever abused the child, or to sustain DCF's negative OPHA conclusion—and sole dependency petition allegation against the father—that "[t]he father cannot take custody of the children" because "his romantic partner has disqualifying abuse history." *See In re J.E.B.*, 971 So. 2d 187, 189 (Fla. 2d DCA 2007) (holding abuse accusation and arrest alone, without subsequent conviction, not "probative evidence of wrongdoing" to support dependency petition). DCF's failure to sustain its disqualification allegation as to the girlfriend also renders immaterial the trial court's finding that the father had not yet sought to change his work schedule to minimize J.F.'s and P.K.'s potential contact with the girlfriend should they be placed in the father's home.

As for the father's own conduct, it is true that DCF did not need to prove he actually abused his other child in order to prove he contributed to the dependency of

J.F. and P.K. *See* § 39.507(7)(b), Fla. Stat. ("The petitioner is not required to prove actual harm or actual abuse by the second parent in order for the court to make supplemental findings regarding the conduct of the second parent."). But DCF did have to prove that the father engaged in *some* conduct "that placed [J.F. and P.K.] at substantial risk of imminent abuse." § 39.507(7)(b), Fla. Stat. DCF only proved the father lived with a girlfriend to whom DCF imputed "disqualifying abuse history" from a single, unelaborated incident of corporal discipline in 2009, and the father's single incident of corporal discipline of the same child even earlier. These incidents—which occurred fourteen or more years ago—cannot be deemed "conduct that placed [J.F. and P.K.] at substantial risk of imminent abuse" at the time the children were adjudicated dependent in 2023. Nor can the trial court's findings that the father and his girlfriend continue to believe in (and show no remorse for) such corporal discipline—not proved to be abusive under chapter 39—sustain a finding that J.F. and P.K. would be at substantial risk of imminent abuse if placed with their father.

## III.

We do not hold that corporal discipline of a three- or four-year-old for wetting himself can never be abusive—it could be if it meets the legal definition of "harm" in chapter 39. No doubt for many, such discipline strains any sense of proportionality, and the trial court was right to take it seriously. The record evidence

in this case, however, is not legally sufficient to support a determination of abuse as defined in chapter 39, or a finding that the father "engaged in conduct placing [J.F. and P.K.] at substantial risk of imminent abuse" as required by section 39.507(7)(b). Accordingly, we reverse the supplemental order adjudicating that the father contributed to the dependency of J.F. and P.K., and we remand for all appropriate proceedings concerning placement of the children and any other matter consistent with this opinion, the prior adjudication of dependency, and chapter 39.

REVERSED and REMANDED.

MIZE and BROWNLEE, JJ., concur.

Tiffany Gatesh Fearing, of Suncoast Legal Group, P.L., Spring Hill, for Appellant.

Kelley Schaeffer, Appellate Counsel, of Children's Legal Services, Bradenton, for Appellee, Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Caitlin E. Burke, Senior Attorney, Appellate Division, of Statewide Guardian ad Litem Office, Tallahassee, for Appellee, Statewide Guardian ad Litem.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED